**PFOTZER et al. v. UNITED STATES, for Use and Benefit of CHICAGO PUMP CO., Inc.**

No. 5895.

United States Court of Appeals
Fourth Circuit.

Argued June 17, 1949.

Decided Aug. 24, 1949.

James G. Martin and Louis Lee Guy, Norfolk, Va., for appellants.

Thomas H. Willcox, Norfolk, Va. (F. J. Dean, Jr., Norfolk, Va. on the brief) for appellee.

Before PARKER, Chief Judge, and SOPER, Circuit Judge, and CHESNUT, District Judge.

CHESNUT, District Judge.

In 1946, when Price Control was still in force, the Chicago Pump Company sold two Comminutors to E. & E. J. Pfotzer. The contract of sale included an "escalator" clause relating to the price. After the Comminutors were assembled by the vendor and delivered to the vendee a dispute arose as to what was the contract price. Pfotzer said it was $14,548, while the Chicago Pump Company contended that the amount was $17,007. The controversy hinges on the proper application of the escalator clause which reads as follows: "In view of present market conditions, prices herein may be increased by the amount of price increase application on file with OPA prior to shipment, or to legal price in effect at time of shipment."

Pfotzer refused to pay the amount in dispute and the Chicago Pump Company sued to recover the balance due in the District Court for the Eastern District of Virginia. The trial judge adopted the plaintiff's contention as to the contract price and entered a judgment for the plaintiff for the balance then due in the amount of $3322 with interest. Pfotzer obtained the Comminutors for installation in a sewage treatment plant which he was building for the United States Government at Norfolk, Virginia, under formal contract therefor. Pfotzer as principal and the Fidelity and Deposit Company of Maryland as surety had executed the customary payment bond and the suit was therefore brought under

the Miller Act, 40 U.S.C.A. § 270a, in the name of the United States of America for the benefit of the Chicago Pump Company against Pfotzer and the surety. From the judgment so entered the defendants have appealed. The material and controlling facts will be briefly summarized.

In 1941 the usual customary price for its Comminutors charged by the Chicago Pump Company was $14,548. By the effect of the Emergency Price Control Act of 1942 this price became "frozen", subject only to possible permissible increase by action of the Price Administrator, and was known as the "base date price" and was still applicable in September 1945. The specifications in Pfotzer's contract for the Comminutors for the Army Base Sewage Treatment Plant required with respect to Comminutors (crushing machinery) that they should be those made by the "Chicago Pump Co. or equal". Thereupon Pfotzer inquired from the Pump Company what would be its price therefor and was advised that it would be $14,548. Pfotzer did not accept the offer but tried to persuade the Army Engineers that a competing product much less costly should be approved as equal to that of the Chicago Pump Company. Failing in this Pfotzer in May 1946 reopened negotiations with the Chicago Pump Company for its machinery. In the meantime, however, in October, 1945, the Chicago Pump Company had filed application with the Price Administrator for authority to increase its prices in view of generally increased costs. This application was not acted on by the Administrator until March 1946 when the Pump Company was authorized to increase its base date price of $14,548 by 17.2%. During the pendency of the Pump Company's application for this authorized price increase it adopted and included in its current contracts the escalator clause above quoted.

In response to the renewed inquiry from Pfotzer the Pump Company by a sales agent in Washington, D. C., wrote to them under date of May 6, 1946, attaching copies of a proposal prepared in the Pump Company's main office at Chicago. This proposal, dated May 3, 1946, after describing the Comminutors, contained the following: "Price—$14,548 * * * This clause must appear on all orders. 'In view of present market conditions, prices herein may be increased by the amount of price increase application on file with OPA prior to shipment, or to legal price in effect at time of shipment'." The proposal also contained certain printed conditions, the last of which read as follows: "There are no agreements or representations, verbal or otherwise, outside of this proposal; and the same shall become a binding contract, as accepted by you, *only* when approved in writing here-on at our home office at Chicago, Illinois (it being expressly agreed that when so executed, such contract shall be considered as being made and entered into at Chicago, Illinois) or, by our written acceptance of your regular purchase order covering equipment herein specified. Such acceptance shall be with the mutual understanding that the terms and conditions of this proposal are a part thereof with the same effect as those signed by both parties named herein and shall prevail over any inconsistent provision of said order." (Italics supplied)

In the Sales Agent's letter of May 6, 1946, enclosing the proposal (which contained a printed form for approval at Chicago, Illinois) it was also stated—"If the attached proposal is satisfactory, will you kindly sign one copy and send it to this office so that we can immediately instruct our Engineering Department to prepare the necessary installation drawings for submittal through you to the engineers for approval and so that we can immediately procure the castings required."

On May 9, 1946, Pfotzer replied to the proposal of May 6th saying: "We hereby advise you of our acceptance of your offer of September 27th, for furnishing two (2) 36A Comminutors to be in accordance with F.W.A. Plans and Specifications, and subject to approval of your equipment by the Consulting Engineers and the F.W. A. A complete set of job plans and specification excerpt, covering your equipment, have been mailed to you under separate cover. Please advise us of the date upon

which we may expect to receive drawings and related data for submission to the Engineers for approval. Six (6) copies of data for approval are required."

The Sales Agent replied on May 11, 1946, calling attention to the fact that Pfotzer had not accepted the offer of September 27, 1945, which had been cancelled and superseded by the proposal of May 3, 1946, but adding "We therefore accept your order as covered in our proposal dated May 3, 1946, and so requested by your transmittal of a signed copy of acceptance thereof." The letter, however, especially referred to the escalator clause as follows: "Due to the OPA and material situation, we cannot accept any order without the price escalator clause. Your order is therefore placed with the understanding that the escalator clause included in our proposal of May 3, 1946 is a part of that proposal. We have received the plans and specifications and are asking our factory to prepare for you immediately installation drawings. We will submit six copies of the requested drawings just as soon as possible."

It will have been noted that the proposal of May 3d referred to the necessity of final action or approval at Chicago. This was not a mere formality. The Comminutors were not a stock article, but had to be specially assembled by proper engineering in accordance with exact specifications to be furnished by Pfotzer. Until these specifications were received at Chicago, the Pump Company could not be sure that all necessary parts would be available under the then existing conditions of scarcity of materials. The Pump Company therefore made it a condition of its proposal that it should not be bound on the contract until the order was accepted at its home office in Chicago. After the specifications had been received and considered by the Pump Company at Chicago, it, on June 14, 1946, formally accepted the order by sending to Pfotzer its "customer's acknowledgment". On the latter it appeared that Pfotzer's order of May 9, 1946 had been received at Chicago on May 13, 1946, and under the caption of "billing" there appeared the following:

"Amt.  ................... $14,548
17.2%  ................... 2,459
Frt.  ..................... Alld.
Total  ................. $17,007"

The paper also contained a conspicuous stamp reading: "Priced in accordance with O. P. A. Reg. No. 136, Order No. 58".

This acknowledgment was received and retained by Pfotzer without comment or objection until after the Comminutors had been assembled and delivered at Norfolk. On October 31, 1946, after a considerable part of the machinery had been delivered the Pump Company sent Pfotzer a bill showing the price to be "$16,995" (there having been a minor adjustment as to the amount), with a deduction for material still undelivered in the amount of $8,027, and thus showing the amount then due $8,-878. Without comment as to price, Pfotzer sent a check on account for $9,000. Their objection to the price was first made in a letter of January 11, 1947, after the whole of the machinery (with a negligible exception) had been delivered and accepted.

In the non-jury trial in the District Court it was Pfotzer's contention that the escalator clause did not justify an increased price over the base price quoted in the proposal of May 3d, because the proper construction of its wording made it applicable only to administrative increases authorized *subsequent* to the Pump Company's proposal of May 3d, and not to a prior authorized increase, as here occurred. More specifically, it was argued that the phrase "price increase application on file with the OPA prior to shipment" excluded an application which had been acted on favorably prior to the proposal, and which was unknown to Pfotzer; and with regard to the alternative phrase in the whole clause, "or to legal price in effect prior to shipment", it was urged that the authority to increase created only a maximum price, and did not change the base price mentioned in the contract. The District Judge ruled against these contentions, holding that the escalator clause was applicable and as properly construed its effect was to increase "the contract price to $17,007 as con-

678

tended by the plaintiff. In view of the factual setting that we have here, we conclude that the judgment must be affirmed for several reasons.

■ In the first place, we cannot agree that the escalator clause by its own wording is inapplicable under the facts of this case. Literally it does fit the facts, because the application for increase in price was actually "on file with the OPA prior to shipment". And we think that it is a very reasonable construction of the other phrase "legal price in effect prior to shipment", that the Pump Company thereby reserved the right to increase the price to whatever might be the legal maximum price at the time of shipment, in view of the economic conditions then existing. If the facts had been different, as, for instance, if the increased price of $17,007 had not been clearly stated in the Pump Company's final acceptance of the order, the defendant might have had a sounder legal approach to its defense, if it had raised the contention that, looking to the sequence of events, the wording of the clause was ambiguous, and as understood by the defendant constituted an implied representation that no increase had been authorized prior to the proposal of May 3d. But that contention was not made at the trial or before us, and on this record could not have been successfully made. Even if the ambiguity of the clause left the price uncertain, that uncertainty was liquidated by the final "customer's acknowledgment".

Nor do we find any misrepresentation, express or implied, by the Pump Company. Its failure to state the final price in the proposal was due to the uncertainty of its price policy on a proprietary article which it knew was to go to the Government and must satisfy Army engineers. Thus the escalator clause provided that the price may (not must) be increased. The Pump Company reserved the option to increase or not at its will, and the correspondence expressly emphasized the importance of the clause as a part of the contract. When the Pump Company determined that increasing costs required the increase in price, it promptly expressed it in the customer's ac-

knowledgment. Again there was no confidential relationship or inequality of bargaining power between the parties, both business concerns of substance.

■ Another reason requires the affirmance of the judgment. As we have noted, the order was not finally accepted by the Pump Company until it sent Pfotzer the "customer's acknowledgment" from Chicago. That stated in clear terms that, by virtue of a price increase authorized by the OPA the final price, as determined by the Pump Company, under the option reserved in the escalator clause, was to be $17,007. By his silence and acquiescence for six months thereafter and until the Comminutors had been assembled and delivered and accepted, Pfotzer is estopped to deny that the price as finally fixed by the contract itself was $17,007.

Affirmed.