Record & Tribune Company, Appellee, v. Brandtjen & Kluge, Inc., Appellant.

No. 47468.

(Reported in 39 N.W. 2d 288)

October 18, 1949.

J. W. Ritchie, of Indianola, for appellant.

Watson & Herrick, of Indianola, for appellee.

Hale, J.—On May 13, 1946, a representative of defendant corporation called on the plaintiff for the purpose of selling it a large automatic press. Negotiations for the sale of the press were carried on between Don L. Berry and Martha Berry, a copartnership, and Art Link, the representative of the defendant. It was urged by defendant's agent that there had been an advance in the price and that in order to avoid further increase

it would be advisable to contract for the press at that time and that shipment would be made within six months or around the first of the year. Link was a witness at the trial, but at no time denied making these statements. A contract was entered into at the agreed price of $2200.80, being cost of press, $1965, plus twelve per cent, $235.80, on which an initial payment of $50 was made by the plaintiff.

The execution of the contract constitutes the principal contention in the case. The contract and duplicate thereof bear a clause which was inserted by rubber stamp, as follows: "These prices subject to increase at vendor's option to effective permitted legal prices prevailing on date of shipment with additional cash increase subject to same terms." Such rubber-stamp statement is called by the defendant an "escalator clause."

Copy of the contract signed on May 13, 1946, but not containing the above clause, is set out as Exhibit A of the plaintiff's petition. As so set out the total amount of the contract was $2200.80. When the carbon copy of the contract was received by the plaintiff from the defendant in the Spring of 1948 it contained the above escalator clause stamped upon it by a rubber stamp, and the figures pertaining to price had been crossed out and typewritten figures inserted. The total figures of $2200.80 for the machinery had been thus crossed out and $3095.70 inserted. Other figures in the contract also had been inserted and the original figures crossed out. The cash credit of $50 which plaintiff had paid at the signing of the contract by the partnership had been allowed, but the other figures that appeared in the contract were all different from the original instrument which the plaintiffs had signed. The question therefore for our determination is: Did the contract signed May 13, 1946, contain the escalator clause as claimed by defendant, or was such claim of contract inserted as alleged by plaintiff?

Both Don L. Berry and Martha Berry testified that they read the contract before they signed it and it did not contain the escalator clause, and that the first time they had any knowledge of its existence was after the altered copy of the contract had been received by them almost two years after its signing. Art Link, representative of the defendant, testified to the con-

trary—that the contract signed by them contained the escalator clause. The district court, under all the testimony submitted, found that it was established by a preponderance of the evidence that the contract executed on May 13, 1946, did. not contain the escalator clause.

After the execution of the contract on May 13, 1946, both the copies were transmitted to the defendant in St. Paul for acceptance. It is alleged by the plaintiff that the contract was accepted by the defendant; the defendant writing the plaintiff on May 22, 1946, thanking it for the order and assuring plaintiff that shipment would be made as soon as possible. The defendant did not inform the plaintiff of the probability of a change in price or of the probability that the shipment might be delayed. The letter from the defendant to the plaintiff is as follows:

"May 22, 1946

"The Record and Tribune Company
203 West Salem Avenue
Indianola, Iowa
"Gentlemen:

"We acknowledge and thank you for your order dated May 13, 1946 given through our Mr. Art Link of our St. Louis branch office for one, 12x18 Six Roller Kluge Automatic Platen Press with automatic lowering delivery, A. C. variable speed single phase motor and controller 110-220 volt.

"Your order is being given to our Production Department today to be scheduled for shipment as soon as possible.

"Again thanking you for this order and assuring you of our cooperation in making this a profitable investment for you, we are

Very truly yours,
BRANDTJEN & KLUGE, INC.
s/ Henry A. Brandtjen
BY Henry A. Brandtjen."

Defendant, in its answer, alleges that at the time it accepted plaintiff's offer there was inserted in said contract the clause quoted in plaintiff's petition, and that no contract existed except said contract containing the escalator clause; that the plaintiff had accepted the alleged counter offer of defendant by accept-

ing and installing the press, and that plaintiff had been using the press since the first of March 1948, and alleges further that under the admissions made by the plaintiff the plaintiff had made a contract to purchase the press for the total sum of $3095.70; that the plaintiff's pleading shows that the plaintiff either accepted the counter offer at the installation of the press or that the plaintiff's petition shows that there was no contract because the minds have never met as to price and that the defendant is either entitled to the return of the press because there is no contract, or to the payment to the defendant by the clerk of court the sum of $1545.70, which plaintiff alleges he has deposited together with interest thereon. It is not disputed that the sum of $1545.70 was deposited by plaintiff with the clerk of the district court as balance due, which would be the balance due plaintiff if the contract was only for the original price claimed, $2200.80.

I. It will be seen from the foregoing that the contention of defendant is that the actual contract containing the escalator clause was executed on May 13, 1946. There was considerable correspondence between plaintiff and defendant relative to the delay in delivery of the press, but we do not find in any place that the escalator clause was mentioned by the defendant, nor is there any evidence as to any statement by defendant relative thereto. Defendant notified plaintiff by telegram on March 17, 1948, that plaintiff would receive the press within ten days, and on March 25, 1948, defendant wrote plaintiff advising it of the shipment of the press, and attaching to the letter a copy of the bill of lading and a copy of the invoice which did not contain the price of the press. The record does not seem to be exactly clear as to the time when the press was actually received at Indianola. It was about the time or after the notification from the defendant. It was, however, installed and used by the plaintiff sometime in April 1948.

On April 26, 1948, plaintiff sent its check for $1500 to the defendant, which was cashed and used by it. The press was apparently received early in April, at about the same time the plaintiff received the altered copy of the contract, and, according to the testimony, this was the first that the plaintiff knew

of the insertion of the escalator clause or any change in price. During all the time between the signing of the order and the receipt of the press plaintiff assumed, and we think had the right to so assume, that the letter from the defendant of date May 22, 1946, was an approval of the contract of May 13, 1946, and that should any change be made by the defendant in such contract it was the duty of defendant to inform plaintiff of such change.

II. Defendant argues first, that negative testimony is not considered of as great weight as positive testimony, and that the circumstances show that the plaintiff's version is unreasonable. In the first place we are not positive that in this case the testimony offered by Don L. Berry and his daughter, Martha Berry, is what would be termed negative testimony. Both Link and the Berrys were testifying to the contents of a written document. One testifying as to its contents, and the other as to its lack of such contents. Defendant argues that because some of the terms of the contract were omitted that the witness' recollections of the form and contents of the instrument were faulty. We do not see that either proposition advanced by the defendant necessarily indicates that their testimony was less definite and certain merely because in this case they testified to the negative of one proposition which was really the only question involved. We see no reason to think that the testimony was of less value than that of Link.

III. Defendant next urges that even if plaintiff's claim that said clause was not in the order at the time he signed it is correct, as stated in his petition, then there was never a meeting of the minds, no contract ever existed, plaintiff knew it at the time the machinery was delivered, and defendant is entitled to recover the reasonable value of the machinery on the day of its installation. Of course plaintiff had a right to rely upon what he claimed to be correct—that the contract was materially changed after signing and acceptance. He so chose, and the district court and this court find that there was such material alteration as he claimed. Under the circumstances he chose not to abandon the contract, the execution of which we find was valid and accepted.

IV. It further argues that even under the detailed facts as found by the trial court, plaintiff was guilty of inequitable conduct after he learned of defendant's expectations as to price and is estopped because of misleading defendant from claiming relief in equity. Plaintiff was not guilty of inequitable conduct. He had a contract which assured to him the price at which he had bought the press. He had reason to think, not only from what was said by Link at the time of the signing of the contract, but also by the statements of a member of the corporation, that he would receive the press within at least a year. Of course the time of delivery was not mentioned in the contract, but he had a right to believe that it would be so delivered in a reasonable time. It is not ordinary business practice to delay unreasonably the delivery of goods, especially those which are so important a part of a business concern. In addition, there was correspondence with the press company and some personal interviews, and in none was there any reference to the change that had been made by the insertion of the escalator clause so that there was no reason to think that the contract was other than what the Berrys had entered into

V. Considerable space in argument was devoted by defendant to the fact that the court gave no consideration to the difficulty of obtaining goods, and various other matters connected with the business conditions of the country at that time. We have no reason to so believe. If for no other reason the delay in the execution of the contract shows that all parties connected were aware of the condition in the country, the difficulty in obtaining goods, and other difficulties such as existed, giving it due consideration.

Other arguments are advanced that we need not review on the question of equitable practice. The principal and perhaps the only question in the case is the contract entered into between the parties. We hold that the district court was right in its ruling and the case therefore should be and is affirmed.— Affirmed.

All JUSTICES concur.