ALUMINUM COMPANY OF AMERICA *v.* ARKANSAS PUBLIC
SERVICE COMMISSION, ET AL.

5-925                                    289 S. W. 2d 889

Opinion delivered May 7, 1956.

*Reuben Goldberg* and *Gordon E. Young,* for appellant.

*John R. Thompson, W. S. Mitchell* and *Edward L. Wright,* for appellee.

ED. F. McFADDIN, Associate Justice.   The issue here posed is, the effect of escalator clauses being included in a petition for rate increase.   A somewhat similar question was presented in the recent case of *Monsanto Chemical Co.* v. *Robinson,* 225 Ark. 1006, 290 S. W. 2d 6 (opinion delivered February 20, 1956).   In the present case the *appellant* is the Aluminum Company of America; and A. B. Green Fire Brick Company and Malvern Brick & Tile Company, designated as *intervenors,* also are on the same brief with the appellant.   In addition to referring to these mentioned parties as "appellant" and "intervenors," we will refer to them collectively as "Industrial Consumers."

In the present case: on March 14, 1955, Arkansas-Louisiana Gas Company (hereinafter called "Gas Com-

pany'') filed with the Arkansas Public Service Commission (hereinafter called ''Commission''), Schedule 3-B, to be effective April 15, 1955, which schedule was a rate increase and made the price of gas to large industrial consumers as follows:

MONTHLY CONSUMPTION RATE:

| First | 1,000 M.C.F. at | $0.3000 per M.C.F. |
|-------|-----------------|--------------------|
| Next | 4,000 M.C.F. at | 0.2600 per M.C.F. |
| Next | 5,000 M.C.F. at | 0.2200 per M.C.F. |
| Next | 90,000 M.C.F. at | 0.1900 per M.C.F. |
| Next | 150,000 M.C.F. at | 0.1800 per M.C.F. |
| Next | 250,000 M.C.F. at | 0.1750 per M.C.F. |
| All over | 500,000 M.C.F. at | 0.1725 per M.C.F. |

This Schedule 3-B also had in it two clauses reading as follows:

''TAX ADJUSTMENT CLAUSE:

''The above rates will be increased by any new or additional taxes (as herein defined) which may be imposed on the company* after April 15, 1955. The term 'taxes' shall mean any tax (other than ad valorem, franchise, income or excess profit taxes), license, fee or charge levied or assessed by any governmental authority on the purchase, production, severance, gathering, transportation, handling, sale or delivery of gas sold under this rate schedule.

''COST OF PURCHASED GAS ADJUSTMENT CLAUSE:

''The rates shown above are based on the various costs of gas purchased for delivery to customers served from the company's integrated transmission system as said costs will prevail by contractual agreements through December 31, 1955. Beginning with the bills rendered for the month of February, 1956, the above rates shall be increased or decreased each month by the increase or decrease in the weighted average unit cost of such gas purchased during the monthly period ending on the last

day of the preceding billing month above or below the average weighted, cost of all such gas purchased during the year ended December 31, 1955. Any change in rates so determined will be computed to the nearest one-hundredth of a cent ($.0001)."

The foregoing "Tax Adjustment Clause" and "Cost of Purchased Gas Adjustment Clause" are together referred to hereinafter as the "escalator clauses"; since that is the recognized nomenclature in utility cases.[1]

When the Gas Company filed its said application for rate increase, these three Industrial Consumers resisted the petition for a variety of reasons, among others being the matters hereinafter set forth. Over the strenuous objection of these Industrial Consumers, the Commission, by order of April 14, 1955, approved the Gas Company's tendered bond of $1,250,000.00 and allowed the aforesaid copied "Monthly Consumption Rate" to become effective on April 15, 1955, under the provisions of § 73-217 Ark. Stats.; but in the said order the Commission recited that ". . . the tax and cost of gas escalator provisions in said schedule shall not be made effective until after further order of the Commission." So, ever since April 15, 1955, the Gas Company has been collecting from these Industrial Consumers at the monthly consumption rate hereinbefore mentioned and thus put into effect under bond, as aforesaid; and these Industrial Consumers have at all times insisted that the monthly consumption rate so put into effect under bond is void *because of the inclusion in the said Schedule 3-B of the two escalator clauses hereinbefore copied.*

The Commission denied such insistence of these Industrial Consumers; the Circuit Court affirmed the Com-

---

[1] In the volume, "Conduct of the Utility Rate Case," edited by Francis X. Welch, and published by Public Utilities Reports, Inc., in 1955, there is a discussion on pages 33 and 34 of escalator clauses in utility rates. The expression, "escalator clause" is not confined to utility cases. For use in other cases see *Wasservogel* v. *Meyerowitz,* 79 N. Y. S. 2d 256; *Simpson Bros.* v. *Dist. of Columbia,* 179 F. 2d 430; *Pfotzer* v. *U. S.,* 176 F. 2d 675; *Simpson Bros.* v. *Dist. of Columbia,* 73 F. Supp. 858; *Record & Tribune Co.* v. *Brandtjen & Kluge, Inc.* (Iowa), 39 N. W. 2d 288; *E. F. Pritchard Co.* v. *Heidelburg Brewing Co.* (Ky.), 212 S. W. 2d 293; and *Lincoln Rug Co.* v. *East Newark Realty Corp.* (N. J.), 61 A. 2d 448.

mission; and .the matter is here on appeal. In a printed·
brief containing 61 pages of argument, and again in oral
argument before this Court, these Industrial Consumers·
have strenuously urged: (a) that the inclusion of the
escalator clauses rendered void the entire application for
rate increase filed by the Gas Company on March 14,
1955; (b) that the Commission had no power to allow the
monthly consumption rate in Schedule 3-B to go into
effect because of the presence of the escalator clauses;
and (c) that because the Gas Company in the Schedule
3-B asked more than it was entitled to, then the Gas Com-
pany lost the right to receive anything.[2]  And all such
insistence is in the face of an admission by the Industrial
Consumers that on final hearing on the rate increase, the
Commission denied the Gas Company all prayed relief
in regard to the two escalator clauses.

There is no necessity for us to discuss whether esca-
lator clauses are good or bad, or to discuss whether these
two escalator clauses come within the intendment and
fulfillment of § 73-219 Ark. Stats., which section seems to

---

[2] The three Industrial Consumers refer to the Schedule 3-B filed
by the Gas Company with the Commission as "the proposed rate sched-
ule"; and here are the topic headings in the brief of the three Industrial
Consumers in this Court:

"I.  *The Arkansas Statutes Do Not Authorize the Filing of a Rate
Schedule Containing Escalator Clauses Such As Those Appearing in
the Purported Rate Schedule Tendered for Filing by the Company.
Therefore the Commission Should Have Sustained Petitioner's Motion
to Dismiss the Proceedings and Strike the Schedule from the Files.*

"A.  The purported rate schedule tendered for filing by the Com-
pany did not comply with the requirements of § 73-217 and was there-
fore not acceptable for filing.

"B.  The purported rate schedule tendered by the Company did
not comply with the requirements of § 73-219 and was therefore not
acceptable for filing under that section.

"C.  The purported rate schedule did not comply with other provi-
sions of the Arkansas Statutes.

"D.  Decision of other commissions support the analysis here pre-
sented of the unacceptability of the Company's escalator schedule.

"II.  *The Commission Was Without Jurisdiction to Take Any
Action With Respect to the Purported Rate Schedule and All Actions
Taken by the Commission With Respect Thereto Were Unlawful.*

"A.  The Commission has no jurisdiction to act on a utility's rates
unless the conditions to attachment of such jurisdiction are met; none
of which were complied with in this case.

"B.  The Commission unlawfully approved a bond filed by the
Company to make effective its suspended rate schedule and unlawfully:
upon approval of said bond prescribed a different schedule for the
interim period of investigation."

recognize some sort of escalator clause to be possible in some situations. The entire matter of escalator clauses was denied by the Commission; and anything we might say as to the validity or invalidity of escalator clauses would be *obiter dicta*. But, notwithstanding all the above, the appellant and the intervenors insist that the inclusion of the escalator clauses in the Gas Company's petition for rate increase automatically prevented the Commission from allowing the monthly consumption rate to go into effect under bond; and this insistence is because—as the Industrial Consumers argue—the Commission could not "cull out" the good from the bad in allowing the rate to go into effect under bond.[3]

We cannot believe—and we, therefore, refuse to hold —that the Public Service Commission was without power to eliminate the escalator clauses before approving the bond to allow the monthly consumption rate to go into effect in accordance with § 73-217 Ark. Stats. The law authorizing the Public Service Commission to act in such matters is found in § 73-201 *et seq.*, Ark. Stats.; and the law gives the Commission many powers. Section 73-202 says the Commission is vested with the power ". . . to supervise and regulate every public utility . . . and to do all things, whether herein specifically designated, that may be necessary or expedient in the exercise of such power. . . ." Certainly if the Commission can "supervise and regulate" a public utility, it can strike the escalator clauses out of a proposed application before allowing the new rate to go into effect under bond. Again, § 73-204 says that ". . . all rates . . . demanded . . . by any public utility . . . shall be just and reasonable, and to the extent that the same may be unjust or unreasonable, are hereby prohibited and declared unlawful." Certainly the Commission had the right to determine that the escalator clauses here in-

[3] It must be remembered that § 73-217, Ark. Stats., was amended by Act 31 of 1955 so as (*inter alia*) ". . . to require a showing of immediate and impelling necessity before a rate increase is allowed a public utility under bond." But the Act 31 of 1955 is not here involved, because this case on the bond matter was decided by the Commission before the effective date of Act 31 of 1955.

volved were not "just and reasonable" so as to be put into effect under bond.

Again, under § 73-217, the utility could put into effect under bond an increased rate; but § 73-219 provides that a hearing must be held before any ". . . sliding scale or automatic adjustment of charges . . ." could be made effective. The Gas Company had a right, when it filed its Schedule 3-B, to ask that its monthly consumption rate go into effect under bond, and that, on final hearing, the escalator clauses be considered under § 73-219. The inclusion of these two requests in the one schedule was not fatal to the power of the Commission to approve the bond and allow the monthly consumption rates to go into effect. To hold otherwise would be to take our present system of liberal pleadings back to the days of the old common law pleadings: when, if the action were brought in trover and should have been in detinue, the result was fatal to the plaintiff's case; or, if the action were brought in assumpsit and should have been brought in covenant or debt, then the plaintiff lost because he had brought the wrong kind of action. We abolished these old forms of action by our Civil Code of 1869; and the spirit of the Civil Code militates against the argument made by these Industrial Consumers. There is nothing fatal to a petition for a rate increase merely because the petition asks for more than is to be allowed on preliminary hearing.

The appellant and intervenors cite us to two cases of the U. S. Supreme Court decided on February 27, 1956, in which they claim the Court held that it is fatal to file a petition under one section of the law when it should have been filed under another section of the law. These two cases are: *United Gas Pipe Line Co.* v. *Mobile Gas Service Corp.*, 350 U. S. 332 (Adv. op.), 100 L. Ed. (Advance Sheets) 291, 76 S. Ct. 373 (Adv. op.); and *Federal Power Comm.* v. *Sierra Pacific Power Co.*, 350 U. S. 348 (Adv. op.), 100 L. Ed. (Advance Sheets) 300, 76 S. Ct. 368 (Adv. op.). But, as we read these two cases, they hold that a bilateral contract rate cannot be changed by

a unilateral filing by the utility with the commission for a new rate. In the Mobile case, Mr. Justice HARLAN summed up the holding of the Court in these words:

"For the reasons discussed below, we hold that the Natural Gas Act does not give natural gas companies the right to change their rate contracts by their own unilateral action."

This quotation goes like a refrain through the entire opinion. And in the *Sierra* case the same point is made. There is nothing in the record before us to even indicate that the Gas Company had made a *preferred bilateral* contract with any of these three Industrial Consumers so that a unilateral filing could not be made. As a matter of fact, such evidence of a *preferred bilateral* contract would be in the teeth of § 73-206 *et seq.*, Ark. Stats. So we fail to see how the two cases from the United States Supreme Court have any bearing in the case at bar.

In the recent case of *Monsanto* v. *Robinson,* 225 Ark. 1006, 290 S. W. 2d 6 (opinion of February 20, 1956), the appellant there made the same contentions as are here made by these Industrial Consumers; and in holding such contentions to be without merit, we said:

"The complaint concedes that the Commission did not allow the escalator clauses to be put into effect under bond; so the appellants have suffered no pecuniary injury from the provisions of which they complain. It is not denied that if the schedule of basic rates had been filed without the escalator clauses the Commission would have had the authority to put those rates in force under bond. It is not denied that if the appellants' motion to dismiss had been granted by the Commission the gas company could have immediately refiled the same schedule of basic rates and put it into effect under bond. Thus the appellants' only grievance lies in the fact that the escalator clauses are physically on file in the office of the Commission."

The foregoing quotation disposes of the contentions of the three Industrial Consumers in the case at bar.

Affirmed.