## ARKANSAS POWER & LIGHT COMPANY v. ARKANSAS PUBLIC SERVICE COMMISSION

81-204                                    628 S.W. 2d 555

Supreme Court of Arkansas
Opinion delivered February 22, 1982
[Rehearing denied March 29, 1982.]

*House, Holmes & Jewell, P.A.,* and *Mitchell, Williams & Selig,* by: *E. B. Dillon, Jr.,* for appellants.

*Jeff Broadwater,* for appellee.

GEORGE ROSE SMITH, Justice. In 1979 the Attorney General began this proceeding by filing a complaint with the Public Service Commission, asserting that the Arkansas Power & Light Company had misinterpreted a 1976 Commission decision approving part of a requested rate increase. The discussion part of that decision was reported as *Re Ark. Power & Light Co.,* 15 PUR 4th 153 (April 21, 1976). The Attorney General's complaint alleged that the Company's misinterpretation of the decision had resulted in overcharges to its ratepayers of $17,297,124, which should be refunded. The Company answered, first, that its interpretation was correct, and second, that the Commission was estopped to interpret the decision any other way. The Commission rejected both the Company's defenses, but found that the refunds should total only $7,791,544.59, with interest. This appeal is from a circuit court judgment affirming the Commission.

The issue is whether the fuel adjustment clause that the Company put into effect after the 1976 decision conformed to that decision. The Commission held that the Company's clause did not conform and that there was no estoppel.

A fuel adjustment clause permits a power company to pass on to its ratepayers all or part of any increase (or decrease) in the cost of the fuel the company uses to generate electricity. AP&L's three principal sources of electricity are the Company's own generation of current by using nuclear fuel, its own generation by burning fossil fuel (oil or gas, for example), and its purchase of current from other power

companies. The proportion in which the Company's electricity is being derived at any particular time from those three sources is called the "generation mix."

Several possible fuel adjustment clauses were presented to the Commission in 1976. The Company sought a single-base clause, which it had used for many years. The Commission refused to approve the continued use of that clause, on the ground, as more fully explained in a slightly later but overlapping AP&L rate case, that the single-base clause provides a utility no incentive to use its most efficient plants. *Re Arkansas Power & Light Co.*, 19 PUR 4th 53, 81 (March 15, 1977).

The Commission, in discontinuing the single-base fuel adjustment clause, directed AP&L to use a multiple-base clause, which necessarily takes the generation mix into account. The Commission's exact language was: "The base generating mix shall be that mix used in the system redispatch for determining the test-year revenue and expenses." Two phrases in that directive need explanation. The test year is the hypothetical year that AP&L used, as is customary in rate cases, to demonstrate its need for a rate increase. The system redispatch is a computation made every 90 seconds by AP&L's parent company, Middle South Utilities, to determine the cheapest combination of the system's available sources of power. In AP&L's test year the redispatch generation mix was 22.516% fossil fuel, 35.806% nuclear, 40.467% purchased power, and 1.211% hydroelectricity. In the next succeeding AP&L rate case, cited above, the Commission adhered to its position, using this language: "The commission determines the appropriate fuel adjustment clause is the one specified in [the 1976 case]. The generation mix will be that mix used to determine the test-year revenue and expenses." 19 PUR 4th 81.

There is no doubt that the Commission's 1976 discussion recognized the importance of the generation mix to be used in the fuel adjustment clause, but the question is: Just what generation mix did the Commission intend? The Commission found in the present case that it had intended a *fixed* mix in the proportion used in the system redispatch

shown in the test year. The Company contends that the Commission's discussion contemplated not a fixed mix but whatever *actual* mix the Company might select in serving its ratepayers. The Commission's final order, implementing its 1976 opinion, was entered on April 8, 1977, but it did not mention the generation mix and so provides us no assistance. (It may be added that a multiple-base mix is never exact in its operation. It may result in the utility company's recovery through the fuel adjustment clause of either more or less than the true change in the cost of fuel.)

The appellant first argues that there is no substantial evidence to support the view that the Commission's 1976 decision contemplated a fixed generation mix rather than a variable actual mix. In making this argument the Company's brief in chief discusses only the testimony of the Company's own witnesses, with the broad statement: "There is no evidence to the contrary." The Commission's brief responds by citing the testimony of the witnesses Copeland, Burns, and Douglas. In reply the appellant insists that Copeland and Burns merely gave "unsupported opinions" about what the Commission had intended — opinions that the Commission itself disregarded.

We cannot accept that narrow view of the testimony supporting the decision under review. Counsel for AP&L did move to strike a few lines from Copeland's testimony, which ran to scores of pages, as being merely his opinion about what the Commission intended. The motion to strike was not acted upon, but in any event it questioned the admissibility of only a small fraction of Copeland's testimony. Copeland testified concerning various formulas that were doubtless understood by the Commission but are beyond our expertise as appellate judges, in the absence of any attempt by the parties to explain the formulas. Copeland stated, and was not cross-examined on the point, that during the 1976 case a Staff witness, Gary Goble, had urged the Commission to adopt a formula that was mathematically identical to AP&L's later actual generation mix, but Goble's formula was rejected. Yet AP&L's actual practice put that formula into effect, according to Copeland.

Douglas's testimony also supported the Commission's conclusion. He impliedly recognized the Commission's earlier emphasis on the need for incentives for the use of the most efficient sources of electricity and pointed out that the Company had profited by using fossil fuel even when it was more expensive than purchased fuel. He said that in 21 of the 22 months in question fossil fuel generation was more expensive than purchased power, but the Company apparently used it. His conclusion, as the Commission noted in the present case, was that AP&L's fuel adjustment clause had the potential for "rewarding increased waste with increased profits." On the case as a whole we cannot say that the Commission's decision is not supported by substantial evidence.

The appellant argues, secondly, that the Commission is estopped to disapprove AP&L's interpretation of the 1976 decision. This argument was summarily rejected by the Commission under our long-standing rule that the state cannot be estopped by the acts of its agents. Since the Commission's decision, however, we have modified our rule by holding that although estoppel is not a defense that should be readily available against the state, our inflexible rule that the state can never be estopped should be abandoned. *Foote's Dixie Dandy* v. *McHenry,* 270 Ark. 816, 607 S.W. 2d 323 (1980). We therefore consider AP&L's argument on its merits.

After the 1976 decision a Commissioner suggested to AP&L that it work with Goble, who was then the Commission's Chief of Rates, in designing new rate schedules and in drafting a fuel adjustment clause. Goble and AP&L representatives did work together in the matter. However, neither the new rate schedules nor the order implementing the Commission's decision contained any specific reference to the generation mix. Goble did not inform the Commission that the proposed fuel adjustment clause did not specify the redispatch fixed mix, but he did submit a memorandum to the Commission stating that he thought the proposed rate schedules conformed to the 1976 decision. The Commission entered a brief order approving the proposed rates, apparently as a matter of routine. AP&L filed 22 monthly

reports that showed the actual generation mix was being used. Goble examined the first few reports before he left the Commission's employ and evidently considered them to be in conformity with the Commission's decision. It is not contended that the Commission itself ever reviewed the monthly reports or that it was expected to do so.

We find hardly any real basis for an estoppel and certainly not the comparatively clear showing that is essential if the state is to be estopped. Goble, as an employee of the Commission, had no authority to make a binding interpretation of the Commission's language. His participation in the drafting of rate schedules which, according to Copeland, represented Goble's own views but not those of the Commission, could not create an estoppel. No doubt there was some ambiguity in the Commission's 1976 decision, but we discern hardly any want of clarity in this sentence from its 1977 decision, handed down before the entry of the implementing order: "A multiple fuel adjustment clause, when the generation mix is determined by the optimum redispatch system for the test year, provides the necessary incentives for the firm always to employ the most efficient plants." 19 PUR 4th 81.

We think it clear that if the Commission's decision was open to different interpretations, as the estoppel argument assumes, that fact was readily apparent to AP&L. On this point the Commission said in the present case, with respect to the substantial evidence argument: "[I]nsofar as the Company may be understood to argue that the Orders are susceptible to more than one interpretation, we point out the obvious fact that the Company should have petitioned the Commission to resolve ambiguities. It proceeded at its peril in placing what we find to be an unreasonable interpretation most favorable to its interests on the Orders involved and acted accordingly." That reasoning also pinpoints the weakness in the Company's defense of estoppel: The necessary reliance upon misleading action by the Commission is lacking.

Affirmed.

HAYS, J., not participating.