896 So.2d 891 (2005)
FLORIDA POWER & LIGHT COMPANY, a Florida corporation, Petitioner,
v.
ALBERT LITTER STUDIOS, INC., a Florida corporation, on behalf of itself and all others similarly situated, Respondent.
No. 3D04-2444.
District Court of Appeal of Florida, Third District.
March 2, 2005.
*892 Steel Hector & Davis LLP, Alvin B. Davis and Patrick J. O'Connor, Miami, for petitioner.
Kozyak Tropin & Throckmorton, P.A., Harley S. Tropin, Gail A. McQuilkin and Adam M. Moskowitz, Coral Gables; and Harke & Clasby, LLP, Lance A. Harke and Sarah Clasby Engle, Miami, for respondent.
Before COPE, WELLS, and SHEPHERD, JJ.
SHEPHERD, J.
Florida Power & Light, Inc. ("FP & L") seeks the issuance of a writ of prohibition to enjoin the Miami-Dade County Circuit Court from continuing to exercise jurisdiction over the proceedings in this case. We have jurisdiction, Art. 5, § 4(b)(3) of the Florida Constitution, and grant the writ.[1]

I. FACTS
We are presented with a purported class action filed against FP & L in the Miami-Dade County Circuit Court by Albert Litter Studios, Inc., ("Albert Litter"). The gravamen of the complaint is that FP & L installed and relied upon a certain type of thermal demand meter for servicing a subset of its commercial electricity users and that the meters miscalculated the amount of electricity, resulting in overcharges.[2] The six-count complaint alleges: 1) breach of implied contract; 2) breach of duty of good faith and fair dealing; 3) negligence; 4) fraudulent inducement; 5) negligent misrepresentation; and also, 6) requests injunctive relief.

II. DISCUSSION
The issue presented is whether the Florida Public Service Commission ("the Commission") has exclusive jurisdiction over the plaintiff's claims, or whether concurrent jurisdiction lies in the circuit court. FP & L argues the Commission has exclusive jurisdiction over this case pursuant to section 366 of the Florida Statutes because the complaint is one seeking a refund for electrical service charges. Albert Litter argues, inter alia, that the Commission lacks the authority to award money damages for tort and contract claims, lacks the resources and experience to handle a class-action suit, is incapable of affording the requested jury trial, and lacks authority to provide injunctive relief.[3] Albert Litter therefore argues that the circuit court necessarily has concurrent jurisdiction over these claims.

*893 A. NATURE OF THE RELIEF SOUGHT
In order to resolve the jurisdictional issue, we must first look to the nature of the relief sought by the plaintiff because it is the nature of the relief sought, not the language of the complaint, that ultimately determines which tribunal has jurisdiction over the claim. See, e.g., Utilities, Inc., 846 So.2d at 1161 (granting prohibition because, "[w]e perceive the issue here to be a dispute [ ] relating to the rates and charges for water") (emphasis added); Winter Springs Dev. Corp. v. Florida Power Corp., 402 So.2d 1225, 1228 (Fla. 5th DCA 1981) ("Actually and essentially this is an action on a contract and not a claim that Florida Power failed to perform some duty placed by law on it as a public utility") (emphasis added); see also Florida Power Corp. v. Zenith Indus., 377 So.2d 203 (Fla. 2d DCA 1979).
In Zenith Industries, an overcharge case factually similar to the one before this court, the Second District held that the mere invocation of the phrase "general, special and exemplary damages" in the complaint did not automatically compel a conclusion that the plaintiff was seeking something other than or in addition to a refund of the overcharges. 377 So.2d at 204. The court further opined that "it is difficult to imagine that the damages directly, naturally and necessarily flowing from an overcharge could possibly be anything other than the amount of the overcharge itself and legal interest thereon." Id. at 205. Albert Litter similarly argues that because its ad damnum clauses call for general, special and punitive damages in the complaint, its suit is beyond the Commission's jurisdiction. Like our sister court, we are not of a mind to allow Florida's complex administrative scheme for regulating public utilities to be so easily thwarted.
The "nature of the relief sought" rule has also been followed in other states in cases with strikingly similar fact patterns to the one before us. In Suleiman v. Ohio Edison Co., 146 Ohio App.3d 41, 764 N.E.2d 1098 (2001), the court held that the plaintiff's common-law negligence and fraud claims against the state power company for a business loss, alleged to have resulted from the failure of the utility to inform the plaintiff prior to replacing an electric meter, was properly brought before the state utility commission because "any claim for [ ] damage regardless of how it is articulated is still a complaint of service" over which the commission concededly had exclusive jurisdiction. Id. at 46, 764 N.E.2d 1098. Likewise, in Chicago ex rel. Thrasher v. Commonwealth Edison Co., 159 Ill.App.3d 1076, 112 Ill.Dec. 46, 513 N.E.2d 460, 462-63 (1987), an alleged street light electrical supply overcharge claim brought for the benefit of the City of Chicago, the court found exclusive jurisdiction to exist in the Illinois Commerce Commission, recognizing again that "[i]n determining whether an action is within the exclusive jurisdiction of the [utility commission] ... courts have consistently focused on the nature of the relief sought rather than on the plaintiff's basis for seeking the relief."
In contrast to these authorities, Albert Litter relies primarily upon two cases, Southern Bell Tel. & Tel. Co. v. Mobile America Corp., 291 So.2d 199 (Fla.1974) and Florida Power & Light Co. v. Glazer, 671 So.2d 211 (Fla. 3d DCA 1996), for its argument that the circuit court maintains concurrent jurisdiction over this action. Upon careful review, we conclude that these cases do more to confirm our analysis than challenge it, as Albert Litter would prefer.
In Mobile America, a small business sued Southern Bell alleging that it "had *894 been damaged by the [phone company's] negligent failure to comply with its statutory duty to provide efficient telephone service." 291 So.2d at 201. The plaintiff sought "money damages" for the alleged "past inadequacies of service." Id. The plaintiff pled in its amended complaint:
[The phone company's] appliances, instrumentalities and service were antiquated, inadequate, insufficient or inefficient in that incoming calls did not get through, incoming calls were cut off during conversation, incoming calls received a busy signal although the lines were not busy, incoming callers were informed that the phone had been disconnected, calls placed on `hold' were cut off, and it was at times impossible to dial outgoing calls [and as a result,] Plaintiff has been unable to adequately communicate with his customers to arrange such mobile home financing as a result of which Plaintiff has lost profits it otherwise would have earned.
Mobile Am. Corp. v. Southern Bell Tel. & Tel. Co., 282 So.2d 181, 182 (Fla. 1st DCA 1973) aff'd as modified 291 So.2d 199 (Fla.1974). Our Supreme Court held that this claim was properly lodged in the circuit court, pointing out that "Nowhere [in the Florida Statutes] is [the Commission] granted authority to enter an award of money damages [ ] for past failures to provide telephone service meeting the statutory standards; this is a judicial function within the jurisdiction of the circuit court pursuant to Art. V. s. 5(b), Fla. Const." 291 So.2d at 202. Accordingly, the claim in Mobile America was properly brought before the circuit court. Id.
Our decision today is entirely consistent with Mobile America. In that case, the plaintiff sought to recover lost profits, i.e., consequential damages, while here the plaintiff's claim is for a refund of charges for electricity it did not use.[4] Albert Litter's strategic and repeated use of the phrase "money damages" or "damages" is insufficient to persuade us that its claim falls within the purview of Mobile America.
Glazer, Albert Litter's remaining primary authority, is even less persuasive. Glazer is a personal injury case. The gravamen of the complaint is that "exposure to magnetic fields" emanating from FP & L owned residential power lines and transformers near his home "caused [Mr. Glazer] to contract a rare fatal cancer known as chronic myelogenous leukemia." 671 So.2d at 213. We categorically rejected FP & L's assertion of exclusive Commission jurisdiction over this case. Glazer's personal injury claim was wholly unrelated to whether FP & L fully complied with all relevant statutes and regulations. Id. at 214. In contrast, the claim made by Albert Litter is concerned with whether Albert Litter was properly charged for its electricity consumption. Albert Litter's assertion that this is a tort action "just like" Glazer is simply incorrect.

B. JURISDICTION OVER REFUNDS FOR OVERCHARGES
The Florida Public Utilities Commission is a creature of the state legislature. *895 Accordingly, its authority  including its jurisdiction, duties, and powers  is derived solely from the legislature. Florida Pub. Serv. Comm'n v. Bryson, 569 So.2d 1253, 1254 (Fla.1990). Section 366.04 of the Florida Statutes states: "[T]he commission shall have jurisdiction to regulate and supervise each public utility with respect to its rates and service ... [and] the jurisdiction conferred upon the commission shall be exclusive and superior to that of all other boards...." Accordingly, the Florida Supreme Court has held that this statute grants the Commission "exclusive jurisdiction over matters respecting the rates and service of public utilities." Bryson, 569 So.2d at 1254. Thus, the remaining issue for this court is whether a consumer of FP & L electricity seeking a refund of overcharges is a matter respecting the rates and service of FP & L. We so conclude.
First, as Albert Litter concedes in its response to FP & L's petition, "there is no dispute that the Florida legislature through Chapter 366 has given the PSC regulatory power to approve the rates and charges that a public utility imposes on customers, and exclusive jurisdiction to adjudicate disputes and challenges to those rates and charges." (Emphasis added). Albert Litter also acknowledges that the Commission "has enacted rules that enable it to compel FP & L to issue refunds when it finds that FP & L imposed an unapproved rate or charge, or a meter is defective...."(Emphasis added). As we have already concluded, and as Albert Litter conceded at oral argument, the purported class is essentially seeking a massive refund, and as Albert Litter correctly notes in its response brief, the Commission has exclusive jurisdiction to consider just such a refund.
Second, the Commission itself filed an amicus brief in the circuit court acknowledging that it has jurisdiction to order a refund of overcharges. Indeed, it issues such orders as a matter of course and has just over a year ago ordered FP & L to refund overcharges rung up by another similar, but not identical, thermal demand meter. See In re: Complaints by Southeastern Utility Servs., Inc., on behalf of various customers, against FP & L concerning thermal demand meter error, PSC-03-1320-PAA-EI (PSC Nov. 19, 2003).[5] Although the Commission acknowledges its lack of jurisdiction over tort or contract claims, we have already concluded that this is not a tort or contract claim beyond the Commission's jurisdiction. We see no reason why the Commission should not be able to adequately address the plaintiff's concerns in this case.
Finally, the case law universally supports FP & L's argument that the proper forum for seeking a refund is the Commission. See, e.g., Charlotte County v. General Dev. Utils., Inc., 653 So.2d 1081, 1085 (Fla. 1st DCA 1995) (holding that "the PSC has jurisdiction to resolve the question of the alleged overcharges...."); Zenith Indus., 377 So.2d at 204 (holding that "jurisdiction to determine and award refunds of the alleged overcharges does not lie in the court but in the [Commission]"); Richter, 366 So.2d at 801 (holding that the Commission has exclusive jurisdiction to issue a refund when the plaintiff alleges an unreasonably high electrical rate). We are unaware of any case, and indeed no case is cited by Albert Litter, that supports its argument that a customer seeking a refund from FP & L may elect to file a complaint with either the Commission or the circuit court. FP & L customers who believe they have been overcharged for electricity and have been denied recompense for the same directly from FP & L must file a complaint with the Commission.

*896 III. CONCLUSION
There is nothing new or novel about today's holding. The essence of the purported class-action claim against FP & L is a refund of money customers paid FP & L for electricity they did not actually use. Jurisdiction for actions such as this properly resides in the Commission. Given the arcane complexities of utility rate-making, the legislature's decision to vest supervision of rates and service exclusively in the Commission must be respected. Indeed, to insert this state's judiciary and juries into the process would create unacceptable havoc in the provision of an essential staple of the lives of the citizenry of this state.
Writ granted.
NOTES
[1] Prohibition is the proper remedy. See English v. McCrary, 348 So.2d 293, 296 (Fla.1977) ("[A] superior court, having appellate and supervisory jurisdiction over an inferior court or tribunal possessing judicial or quasi-judicial power, may prevent such inferior court or tribunal from exceeding jurisdiction or usurping jurisdiction over matters not within its jurisdiction"); Utilities, Inc. of Florida v. Corso, 846 So.2d 1159, 1161 (Fla. 5th DCA 2003) ("Prohibition is the proper remedy when a circuit court has wrongly taken jurisdiction of matters which are properly the province of the [Commission]").
[2] Although tip-toeing around admissions of legal culpability, FP & L suggested at oral argument that there is a possibility that these meters may be as guilty of undercharging customers as ringing up overcharges. FP & L says that it will not seek retroactive payment of any undercharges.
[3] In its amicus brief filed in the circuit court, the Commission concedes that it lacks the authority to issue injunctive relief. However, the Commission may effectively have such authority because it has licensing authority for the meters that FP & L uses. See generally § 366.05, Fla. Stat. (2004). More to the point, FP & L advised at oral argument that it is no longer installing this type of meter and is in the process of replacing those currently in use. For all of these reasons, the injunction issue is likely moot as a practical matter.
[4] At oral argument, counsel for Albert Ritter was asked whether the "substance" of the action was a refund for overcharges, to which he responded, "That's true." A fair reading of the complaint further confirms that this is a pure refund case. If Albert Ritter's complaint had included claims not within the ambit of Commission resolution or an additional good faith claim for an award of consequential damages, then our resolution of this case might be more nuanced. See Richter v. Florida Power Corp., 366 So.2d 798, 799 n. 2 (Fla. 2d DCA 1979) (declining to consider the effect of a combined refund and consequential damage claim); Zenith, 377 So.2d at 205 (staying a general damage claim until Commission resolves the overcharge issue).
[5] In that case, FP & L has also replaced the meters, just as it is apparently doing here.