CENTERPOINT ENERGY, INC., Centerpoint Energy Resources Corp. (f/k/a Reliant Energy Resources Corp.), Entex Gas Marketing Company, Centerpoint Energy Field Services, Inc., and Centerpoint Energy Pipeline Services, Inc. *v.*
MILLER COUNTY CIRCUIT COURT, Second Division, The Honorable Jim Hudson, Circuit Judge, Presiding; Weldon Johnson; and Angela Sullivan Engledowl

06-1294                                          258 S.W.3d 336

Supreme Court of Arkansas
Opinion delivered June 7, 2007

*Baker Botts, LLP*, by: *B. Daryl Bristow, Mark R. Robeck, Amy Douthitt Maddux*, and *Jason M. Ryan*; *Jackson Walker, LLP*, by: *Richard E. Griffin*; *Friday, Eldredge & Clark, LLP*, by: *James M. Simpson, Robert S. Shafer*, and *Martin A. Kasten*; and *Atchley, Russell, Waldrop & Hlavinka, LLP*, by: *J. Dennis Chambers*, for petitioners.

*Patton, Roberts, McWilliams & Capshaw*, by: *Phillip N. Cockrell, Richard A. Adams*, and *Shivali Sharma*; *Keil & Goodson*, by: *John C. Goodson* and *Matt Keil*; *Nix, Patterson & Roach, LLP*, by: *C. Cary Patterson* and *Michael B. Angelovich*; *James M. Pratt, Jr., P.A.*, by: *James M. Pratt, Jr.*; and *Eggleston & Briscoe*, by: *Wade Vandiver* and *Bill Eggleston*, for respondents.

*Mary W. Cochran*, General Counsel, and *Randolph Hightower*, Commission Counsel, Arkansas Public Service Commission, for Arkansas Public Service Commission as amicus curiae.

*Greg Abbott*, Attorney General of Texas, *Kent C. Sullivan*, First Ass't Attorney General, *Edward D. Burbach*, Dep. Attorney General for Litigation, *Karen Kornell*, Ass't Attorney General, Chief, Natural Resources Division, *Daniel C. Wiseman*, Ass't Attorney General, Natural Resources Division, for Public Utility Commission of Texas, as amicus curiae.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Derrick W. Smith*; *Eve Kahao Gonzalez*, General Counsel, Louisiana Public Service Commission, for Louisiana Public Service Commission as amicus curiae.

Robert L. Brown, Justice. Petitioners Centerpoint Energy, Inc. (hereinafter "Centerpoint"); Centerpoint Energy Resources Corp. (f/k/a Reliant EnergyResources Corp.) (hereinafter "CERC"); Entex Gas Marketing Company (hereinafter "EGMC"); Centerpoint Energy Field Services, Inc.; and Centerpoint Energy Pipeline Services, Inc. (hereinafter referred to collectively as

"Centerpoint petitioners"), have petitioned this court for a writ of prohibition to prohibit the Miller County Circuit Court from exercising subject-matter jurisdiction over a class-action complaint styled *Weldon Johnson, et al. v. Centerpoint Energy, Inc., et al.*, Miller County Circuit Court No. 04-327-2.[1] We grant the writ of prohibition in part, as explained below.

The underlying facts are these. On October 8, 2004, Weldon Johnson, a resident of Miller County, Arkansas, and Guy W. Sparks, a resident of Bowie County, Texas, filed a class-action complaint in the Miller County Circuit Court against the petitioners, as well as several other named defendants,[2] wherein they asserted claims for fraud, unjust enrichment, and civil conspiracy concerning the cost of natural gas delivered to the purported class representatives and to other customers similarly situated in Arkansas and Texas. The complaint alleges that Centerpoint transports and sells natural gas to customers through divisions of its wholly owned subsidiary, CERC, a regulated gas utility company that conducts natural gas distribution and pipeline operations. CERC, through "individuals" within Centerpoint's "Gas Supply Group," purchases natural gas from various suppliers, which are also named defendants in the complaint. The "individuals" in Centerpoint's "Gas Supply Group" also purchase natural gas for EGMC, a Centerpoint affiliate, wholly owned subsidiary, and unregulated utility company that provides natural gas to major commercial and industrial consumers. Thus, the complaint alleges that the same "individuals" purchasing natural gas for CERC, as a regulated entity, are also purchasing natural gas for Centerpoint's unregulated entity, EGMC.

The complaint asserts that Centerpoint and its affiliates are involved in a fraudulent "high-low" selling scheme for natural gas that creates huge profits for the company at the expense of residential customers. The plaintiffs allege that suppliers sell natural gas to the regulated utility divisions of Centerpoint for resale to residential and commercial consumers in the states of Arkansas, Texas, Oklahoma, Louisiana, and Mississippi at prices far above market prices. The cost of the natural gas is then passed on to the

---

[1] The class has not been certified.

[2] The other multiple named defendants consist of pipeline companies and natural gas suppliers from which Centerpoint is alleged to have purchased natural gas under the fraudulent selling scheme.

customers through a purchased-gas-adjustment clause[3]. Because of these high-priced purchases by the regulated subsidiaries, the gas suppliers are then able to sell natural gas to unregulated subsidiaries at below market prices, and those subsidiaries, in turn, sell the natural gas to major commercial and industrial consumers. Industrial natural gas prices are not government regulated, and the complaint alleges that because Centerpoint buys this natural gas at such low prices, it obtains a competitive advantage in the industrial natural gas market. The complaint asserts causes of action against the defendants for fraud, unjust enrichment, and civil conspiracy and seeks relief on behalf of residential and commercial customers in the form of actual money damages sustained as a result of the alleged fraud, as well as exemplary and punitive damages and reasonable and necessary attorneys' fees.[4]

On June 30, 2005, Centerpoint and others moved to dismiss the complaint and urged that the class-action complaint involved rates charged to those customers, who are the ratepayers, and that exclusive jurisdiction of these claims lay with the state regulatory agencies, not with the circuit court. The Arkansas Public Service Commission (APSC) and the Texas Railroad Commission (TRRC) both filed *amicus curiae* briefs with the circuit court in support of the motion to dismiss.

The plaintiffs next filed an amended complaint,[5] asserted the same basic allegations, and substituted Angela Sullivan Engledowl as named class representative from Bowie County, Texas, replacing Guy W. Sparks. The amended complaint alleges that subject-

---

[3] A purchased-gas-adjustment clause, or a fuel adjustment clause, allows utility companies to make automatic adjustments in its customer billings for variations in the cost of purchasing and storing gas and other utilities. A customer's rate varies directly with the utility company's cost to produce and deliver natural gas. *See Arkansas Power & Light Co. v. Arkansas Public Serv. Comm'n*, 275 Ark. 164, 628 S.W.2d 555 (1982); *see also Aluminum Company of America v. Arkansas Public Serv. Comm'n*, 226 Ark. 343, 289 S.W.2d 889 (1956).

[4] The defendants initially removed the case to federal district court based on their assertion that the Natural Gas Act and other federal legislation and regulations preempted all of the plaintiffs' claims. The federal district court remanded the case to the circuit court and ruled that federal law did not preempt the respondents' claims because the claims were based exclusively on Arkansas common law.

[5] The amended complaint dropped three defendants who were originally sued: Centerpoint Energy Gas Transmission Company, Mississippi River Transmission Corp., and Occidental Petroleum Company. Also, Bechtel Corporation was dismissed without prejudice on June 19, 2006.

matter jurisdiction is proper in the circuit court, because the plaintiffs are not really complaining about the rates they are being charged but rather about the fraudulent efforts by the defendants to misrepresent the actual cost of natural gas. The amended complaint further alleges that state regulatory agencies do not have the authority to adjudicate private causes of action or tort claims, and that because many of the defendants are unregulated, the various regulatory agencies do not have jurisdiction to adjudicate the claims against these defendants. The relief sought by the plaintiffs remains the same.

After a hearing on the defendants' motion to dismiss, the circuit court entered an order denying the motion. In its order, the circuit court ruled that state regulatory agencies did not have the authority to regulate the actual cost of natural gas, which was the subject matter of this lawsuit. It further ruled that the APSC did not have the authority to adjudicate claims of common law fraud, to provide a remedy to class members that reside outside the State of Arkansas, or to adjudicate claims involving unregulated defendants. The circuit court also ruled that the filed-rate doctrine did not deny it subject-matter jurisdiction, because the plaintiffs were not requesting a change in their natural gas rates.

The Centerpoint petitioners have now filed a petition for writ of prohibition with this court and are contending that the state regulatory agencies, including the APSC, have exclusive jurisdiction over the claims asserted by the plaintiffs on behalf of the proposed class and that the circuit court is wholly without jurisdiction. They urge that the plaintiffs' core contention is that they paid too much for their natural gas service and that this is precisely a matter over which the APSC has sole and exclusive jurisdiction. They insist that the plaintiffs' complaint deals with the rates they were charged and asserts that the circuit court erred in ruling that the APSC has no authority over complaints regarding the cost of natural gas. They further claim that the circuit court apparently confused the issue of whether the APSC actually fixes the proper cost of natural gas with whether it has the authority to examine the costs charged and to disallow improper costs.

The Centerpoint petitioners further claim that the APSC has sole and exclusive jurisdiction by statute to adjudicate disputes between customers and utility companies over public rights. They assert that the right to a reasonable natural gas rate is a public right and that the plaintiffs here have no private cause of action sufficient to vest jurisdiction in the circuit court. They also maintain that the

circuit court erred in ruling that the APSC lacks jurisdiction and further erred in ruling that the APSC has no authority to grant proper relief to the plaintiffs. The Centerpoint petitioners emphasize that the APSC may give refunds, billing credits, or any other appropriate relief to customers. With regards to attorneys' fees, they argue that although the APSC may not have the authority to award them, attorneys' fees are generally not recoverable in any event under Arkansas law, absent a specific statutory authorization. Furthermore, they assert that the plaintiffs did not seek disgorgement of profits by the gas suppliers in their complaint and that the APSC does have the ability to make the plaintiffs and purported class members whole.

The APSC has filed an *amicus curiae* brief with this court supporting the grant of the writ of prohibition. It claims in that brief that it has sole and exclusive jurisdiction over the rates charged for public utilities in Arkansas, and it maintains, in addition, that any gas costs that flow through to customers or ratepayers are part of the rates charged by Centerpoint and that, regardless of the plaintiffs' allegations of why they were overcharged, the fact remains that their complaint is that they were charged too much for natural gas.

The plaintiffs, on the other hand, contend that the circuit court properly has jurisdiction over their claims. They assert that there is no showing of extraordinary circumstances that would justify the issuance of this writ, and that the Centerpoint petitioners are improperly using a writ of prohibition as a means to challenge the denial of a motion to dismiss. They urge that the circuit court clearly has jurisdiction over their common law claims of fraud, unjust enrichment, and conspiracy. They insist that these are common law claims over which the APSC lacks jurisdiction to adjudicate and award money damages. They assert that even if the APSC has jurisdiction, the circuit court has at least concurrent jurisdiction. The plaintiffs add that the circuit court is the only forum that can adjudicate all of the plaintiffs' claims against all named defendants. They maintain that their complaint is not about the rates they have been charged but is instead about the fraudulent scheme occurring outside of the rate structure. Contrary to the Centerpoint petitioners' assertion, they argue that they do seek disgorgement damages from the defendants and that the filed-rate doctrine does not apply to their claims. The plaintiffs further urge that the APSC cannot adjudicate claims that involve private rights, and they insist that their claims regard the private tort of fraud.

They argue, finally, that the APSC does not have authority to investigate the actions of the unregulated and unaffiliated defendants named in their complaint, which are the natural gas suppliers, and that the transfer of their claims to the APSC will deny them access to the courts.

As an initial matter, this court is of the opinion that its jurisdiction is confined to the issue of the jurisdiction of the APSC over Arkansas customers, who are potential class members. We decline to adjudicate the issue of the jurisdiction of the TRRC under Texas law vis-a-vis Texas ratepayers. Accordingly, we deny the writ of prohibition with respect to the potential Texas class members and the TRRC.

The standard of review for a writ of prohibition is clear:

> It is well settled that a writ of prohibition is an extraordinary writ that is only appropriate when the lower court is wholly without jurisdiction. *Ulmer v. Circuit Court of Polk County*, 366 Ark. 212, 234 S.W.3d 290 (2006). Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. The writ is appropriate only when no other remedy, such as an appeal, is available. Prohibition is a proper remedy when the jurisdiction of the trial court depends upon a legal rather than a factual question. We confine our review to the pleadings in the case. Moreover, prohibition is never issued to prohibit a trial court from erroneously exercising its jurisdiction. Writs of prohibition are prerogative writs, extremely narrow in scope and operation; they are to be used with great caution and forbearance. They should issue only in cases of extreme necessity. *Id.*

*Erin, Inc. v. White County Circuit Court*, 369 Ark. 265, 268, 253 S.W.3d 444, 446-47 (2007). We have further held that a writ of prohibition may lie following the denial of a motion to dismiss for lack of subject-matter jurisdiction. *See State v. Circuit Court of Lincoln County*, 336 Ark. 122, 984 S.W.2d 412 (1999).

This court has recognized that the APSC "is a creature of the legislature, and its duties are legislative." *Cullum v. Seagull Mid-South, Inc.*, 322 Ark. 190, 194, 907 S.W.2d 741, 743 (1995). Moreover, the General Assembly has endowed the APSC with sole and exclusive ratemaking authority: "[t]he Arkansas Public Service Commission is vested with the sole and exclusive jurisdiction and authority to determine the rates to be charged for each kind of

product or service to be furnished or rendered by electric, gas, telephone, or sewer public utilities in Arkansas." Ark. Code Ann. § 23-4-201(a)(1) (Repl. 2002).

The term "rate" is broadly defined under Arkansas law to include:

> every compensation, charge, fare, toll, rental, and classification, or any of them, demanded, observed, charged, or collected by any public utility for any service, products, or commodity offered by it as a public utility to the public and means and includes any rules, regulations, practices, or contracts affecting any compensation, charge, fare, toll, rental, or classification;

Ark. Code Ann. § 23-1-101(10) (Repl. 2002).

Any customer of a public utility may file a complaint with the APSC. *See* Ark. Code Ann. § 23-3-119(a)(1) (Repl. 2002). Once a complaint is filed, the APSC has the authority "to conduct investigations and public hearings, to mandate monetary refunds and billing credits, or to order appropriate prospective relief as authorized or required by law, rule, regulation, or order." Ark. Code Ann. § 23-3-119(d) (Repl. 2002). That section further provides that the jurisdiction of the APSC over disputes between customers and public utility companies is primary and must be exhausted before a circuit court may assume jurisdiction. *See id.* The General Assembly has made clear, however, that the APSC does not have jurisdiction over disputes that involve *private* rights found in common law claims of contracts, torts, or property. *See id.* Subsection (f) of that section reads:

> (f)(1) It is the specific intent of the General Assembly in enacting the 1985 amendment to this section to vest in the Arkansas Public Service Commission the authority to adjudicate individual disputes between consumers and the public utilities which serve them when those disputes involve public rights which the commission is charged by law to administer.

> (2) Public rights which the commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes. The commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

Ark. Code Ann. § 23-3-119(f) (Repl. 2002).

Furthermore, in the case of *Cullum v. Seagull Mid-South, Inc.*, *supra*, this court adopted the filed-rate doctrine and in so doing said:

> The filed rate doctrine "forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority." The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.
>
> The purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require. The Supreme Court recently explained: "The duty to file rates with the Commission . . . and the obligation to charge only those rates . . . have always been considered essential to preventing price discrimination and stabilizing rates."

*Cullum*, 322 Ark. at 196, 907 S.W.2d at 744 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 954 F.2d 485, 488 (8th Cir. 1992), *cert. denied*, 504 U.S. 957 (1992)).

The facts in *Cullum, supra*, are similar to those presented in the case before us. Cullum filed a class action lawsuit in circuit court against a national gas exploration company, Seagull Mid-South, Inc., and others alleging that the defendants had committed fraud and conspired to commit fraud that artificially inflated the rates for natural gas. Cullum argued to this court that his cause of action concerned a private right of action in tort and concerned matters outside the ratemaking process. This court, nevertheless, characterized the issue as being whether the tort action impermissibly encroached on the exclusive authority of the APSC to fix natural gas rates. After applying the fixed-rate doctrine as described above, we concluded that the APSC had exclusive jurisdiction over Cullum's claims. *Cullum, supra.*

In adopting the Eighth Circuit's rationale for the filed-rate doctrine as set out in *H.J., Inc., supra*, this court reasoned that the underlying alleged fraudulent conduct of the defendants did not control whether the fixed-rate doctrine applies. Rather, we said "the damages sought by the Cullums could only be gauged by assessing the difference between the rates charged by the PSC and

the rates the PSC should have charged absent the pernicious conduct the Cullums allege." *Cullum*, 322 Ark. at 197, 907 S.W.2d at 745. We then added:

> This court has not formally adopted the filed rate doctrine, although the General Assembly has enacted a statute which prevents a public utility from charging rates other than those approved by the PSC. *See* Ark. Code Ann. § 23-4-107 (1987). The policy behind the doctrine, as expressed by the Eighth Circuit in the *H.J. Inc.* decision, is persuasive in our judgment. That policy looks to the stability, uniformity, and finality inherent in limiting rate charges to what has been filed with the regulatory agency and what has been determined as the reasonable rate by that agency. This is a legislative function delegated by the General Assembly to the PSC. We adopt the filed rate doctrine today and apply it to the case at hand. We hold that the circuit court lacked jurisdiction over the civil causes of action in tort which necessarily required an assessment of damages measured by what was the filed rate with the PSC and what the rate should have been. *To do otherwise would permit a direct attack on the authority of the PSC to fix rates.*

*Id.* at 197-98, 907 S.W.2d at 745 (emphasis added).

Recently, this court reaffirmed its decision in *Cullum, supra,* in *Austin v. Centerpoint Energy Arkla,* 365 Ark. 138, 226 S.W.3d 814 (2006). In that case, Austin filed a class-action, illegal-exaction lawsuit against the APSC as well as against three natural gas utility companies, alleging that she had been charged an illegal tax in the form of a surcharge on her natural gas bill.[6] *See Austin, supra.* This court held that despite Austin's use of the terms "tort" and "illegal exaction" in her complaint, her cause of action in reality was not a private cause of action in tort but was a dispute over rates. We said that "the mere labeling of a claim as a tort claim does not automatically deprive the PSC of authority to hear the complaint." *Austin,* 365 Ark. at 146, 226 S.W.3d at 819. This court further held that the filed-rate doctrine was properly applied to Austin's claim,

---

[6] This surcharge was pursuant to a "Temporary Low Income Customer Gas Reconnection Policy" passed by the APSC that imposed a surcharge on state-wide customers for a twelve-month period in order to help pay for the reconnection of natural gas service during the winter months for low-income families whose service had been disconnected. In *Arkansas Gas Customers v. Arkansas Public Service Comm'n,* 354 Ark. 37, 118 S.W.3d 109 (2003), this court held that the APSC did not have the legislative authority to establish the policy.

as she sought a refund of the surcharge, and the only way to determine the proper amount of the refund would be to measure the difference between the rate she actually paid and the rate she should have paid. Accordingly, this court held that the APSC had sole and exclusive jurisdiction over Austin's claims. *Austin, supra.*

Supreme courts in other states have reversed their trial courts and intermediate appellate courts when dismissal on jurisdictional grounds was denied, and have held that their respective public utility commissions had exclusive jurisdiction over consumers' complaints regarding rates charged by utility companies. *See, e.g., QCC, Inc. v. Hall,* 757 So. 2d 1115 (Ala. 2000) (supreme court reversed trial court's denial of motion to dismiss on interlocutory appeal and held that Alabama Public Service Commission had exclusive jurisdiction over a customer's complaint that the defendant switched her long-distance telephone carrier without her permission and charged her increased telephone fees and rates as a result, though the complaint alleged fraud, fraudulent suppression, negligence, and wantonness); *Wilson v. Harlow,* 860 P.2d 793 (Okla. 1993) (supreme court reversed trial court's denial of motion to dismiss and held, on interlocutory appeal, that although plaintiff's class-action complaint was labeled as one for negligence and intentional tort and requested money damages, the plaintiff's goal was to recover for rate overcharges which requires an exercise of rate-making authority which lies exclusively in the commission); *The Daily Advertiser v. Trans-La,* 612 So. 2d 7 (La. 1993) (noting that a supervisory writ was the more preferable route to go, supreme court reversed trial court's denial of exception for lack of subject-matter jurisdiction on expedited appeal and held Louisiana Public Service Commission had exclusive jurisdiction over a class-action lawsuit brought by natural gas consumers alleging that natural gas distributors and pipeline companies committed antitrust violations, among other things, by manipulating their weighted average cost of gas and passing extra costs along to customers through automatic fuel adjustment clauses); *Daaleman v. Elizabethtown Gas Co.,* 390 A.2d 566 (N.J. 1978) (supreme court reversed appellate court and held that Public Utility Commission had exclusive jurisdiction over class-action lawsuit where plaintiffs alleged that utility company had manipulated purchased gas adjustment clause so as to overstate the actual cost of gas purchased as well as the quantity thereof and passed excess costs through to customers); *but see Jenkins v. Entergy Corp.,* 187 S.W.3d 785 (Tex. App. 2006) (Texas Court of Appeals — Corpus Christi reversed trial court and held Texas Public Utility Commission did not have

exclusive or primary jurisdiction over customer's claims due to allegations of a conspiracy between electric utility and wholesale transmitters made at interstate levels; plus regulatory agency could not grant damage relief).

While the cases cited above are interlocutory appeals from denials of motions to dismiss for lack of subject-matter jurisdiction in civil courts over matters affecting rates, or in one case, review of an intermediate appellate court's decision, other courts have issued writs of prohibition holding that the trial courts lacked subject-matter jurisdiction over matters affecting rates. *See, e.g., Florida Power & Light Co. v. Albert Litter Studios, Inc.*, 896 So. 2d 891 (Fla. App. 2005); *State ex rel. Columbia Gas of Ohio, Inc. v. Henson*, 810 N.E.2d 953 (Ohio 2004); *State ex rel. The Illuminating Co. v. Cuyahoga City Court of Common Pleas*, 776 N.E.2d 92 (Ohio 2002). Arkansas, of course, provides no interlocutory appeal from a denial of a motion to dismiss for lack of subject-matter jurisdiction, although this court can raise the issue *sua sponte. See Cincinnati Ins. Co. v. Johnson*, 367 Ark. 468, 241 S.W.3d 264 (2006).

■ What is persuasive to this court and militates in favor of granting the writ with respect to the APSC and Arkansas ratepayers is the clear authority given to the ASPC by the Arkansas General Assembly. "Sole and exclusive jurisdiction" over rates is vested in the ASPC and what constitutes "rates" is broadly defined. To repeat, the basic facts alleged in the complaint are that the defendant gas suppliers and pipeline companies sell natural gas to the regulated utility divisions of Centerpoint at above market prices, and Centerpoint passes these excessive costs on to its residential and commercial customers through its purchased-gas-adjustment clause. Those same defendant suppliers and pipeline companies then sell natural gas to unregulated divisions of Centerpoint at below market prices, which, allegedly, gives Centerpoint a competitive advantage in the unregulated industrial natural gas market. Because of this arrangement, the allegation is that Centerpoint is able to reap excessive profits from both the regulated and unregulated natural gas markets. In essence, the plaintiffs are complaining that they are being charged too much for natural gas, and their actual damages can only be measured by comparing the rates they have been charged and the rates they should have been charged absent the alleged fraudulent conduct. This squarely falls within the exclusive jurisdiction of the APSC under *Cullum, supra,* and *Austin, supra.* The respondents attempt to disguise their

claims by labeling them as common law tort claims, but this court must look beneath the labels and inquire into the true nature of the complaint. *See Austin, supra.* In doing so, it is clear that the complaint is essentially that Centerpoint has overcharged the plaintiffs and proposed class members. This is precisely the kind of dispute that should be decided by the APSC.

■ Regarding the unregulated defendants, there is nothing in the statutes that suggests that the APSC does not have authority to investigate the actions of unregulated affiliates of utility companies if the actions of those affiliates are affecting the rates charged by the utility company to consumers. Indeed, the statutory scheme for the APSC indicates just the opposite. For example, Ark. Code Ann. § 23-2-301 (Repl. 2002) states that the APSC has the power to "supervise and regulate every public utility . . . and to do all things, whether specifically designated in this act, that may be necessary or expedient in the exercise of such power and jurisdiction." Furthermore, the APSC has the authority to require by subpoena the production of information and documents from utility companies and any of their affiliates during an investigation, whether that information is inside the State of Arkansas or outside of the state. *See* Ark. Code Ann. § 23-2-408 (Repl. 2002).

■ The APSC, in addition, has the authority to award proper relief to the plaintiffs and Arkansas class members. The APSC has the authority to mandate "monetary refunds and billing credits, or to order other appropriate prospective relief." Ark. Code Ann. § 23-3-119(d) (Repl. 2002). Although the APSC may not award attorneys' fees, *see Brandon v. Arkansas Public Service Comm'n*, 67 Ark. App. 140, 992 S.W.2d 834 (1999), attorneys' fees are generally not chargeable as costs of litigation unless expressly permitted by statute. *See Davis v. Williamson*, 359 Ark. 33, 194 S.W.3d 197 (2004). Finally, our court of appeals has held that the APSC has the authority to hear class-action complaints. *See Brandon, supra.*

■ We hold that the APSC has sole and exclusive jurisdiction over the plaintiffs' claims as they relate to Arkansas customers but not as they relate to Texas customers under Texas law. Without question, Mr. Johnson's claims should be explored by the APSC. To repeat, state law provides that the jurisdiction of the APSC "in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction." Ark. Code Ann.

§ 23-3-119(d) (Repl. 2002). As this case evolves before the APSC, should it determine that it lacks jurisdiction to hear certain aspects of the assertions made or that complete relief cannot be afforded to Arkansas customers, the obvious solution would be for the APSC to release jurisdiction.

Writ granted in part; denied in part.

GUNTER, J., not participating.

HANNAH, C.J., and DANIELSON, J., dissent.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent. The majority treats this case as an appeal. It is not. The majority correctly states the standard of review as set out in *Erin, Inc. v. White County Circuit Court*, 369 Ark. 265, 253 S.W.3d 444 (2007) and then fails to follow it. We confine our review to the pleadings. The question is whether the circuit court is wholly without jurisdiction. *Id.* Jurisdiction is tested on the pleadings and not the proof. *Hatfield v. Thomas*, 351 Ark. 377, 93 S.W.3d 671 (2002); *Modern Laundry v. Dilley*, 111 Ark. 350, 163 S.W. 1197 (1914). The plaintiffs plead common law causes of action against corporate entities, some of which are regulated by the Arkansas Public Utilities, and some which are not. Also, pursuant to plaintiffs' pleadings, those causes of action lie outside the regulatory scheme and may be tried in circuit court. Further, plaintiffs have pleaded causes of action to recover injuries to out-of-state consumers who clearly are not within the APSC's jurisdiction. As yet, there is no decision on the validity of the pleadings. Additionally, there are facts in dispute that may determine whether there is jurisdiction. The majority relies in error on *Austin v. Center Point Energy ARKLA*, 365 Ark. 138, 226 Ark. 814 (2006) and *Cullum v. Seagull Mid-South, Inc.*, 322 Ark. 190, 907 S.W.2d 741 (1995) in error. Both of these cases concern appeals and are not on point in the present matter.

I agree that "[i]n essence, the plaintiffs are complaining that they are being charged too much for natural gas;" however, I disagree that this court may at this point conclude based on a review of the pleadings alone that "their actual damages can only be measured by comparing the rates they have been charged and the rates they should have been charged absent the alleged fraudulent conduct." The plaintiffs have pleaded otherwise, and those pleadings must be litigated. The writ is premature and issued in error.

DANIELSON, J., joins.

Paul E. Danielson, Justice, dissenting. I disagree that the circuit court in the instant case is wholly without jurisdiction. Here, the plaintiffs have alleged causes of action, which are clearly within the jurisdiction of the circuit court. Moreover, the instant class-action suit involves much more than a simple complaint regarding rates.

As we have said time and time again, a writ of prohibition should be used with great caution and forbearance and should only issue in cases of extreme necessity. *See, e.g., Ulmer v. Circuit Court of Polk County*, 366 Ark. 212, 234 S.W.3d 290 (2006); *Hatfield v. Thomas*, 351 Ark. 377, 93 S.W.3d 671 (2002); *Monroe Auto Equip. Co. v. Partlow*, 311 Ark. 633, 846 S.W.2d 637 (1993). Indeed, we have held that the writ is never issued to prohibit a circuit court from erroneously exercising its jurisdiction. *See Jordan v. Circuit Court of Lee County*, 366 Ark. 326, 235 S.W.3d 487 (2006); *Cockrum v. Fox*, 359 Ark. 508, 199 S.W.3d 69 (2004); *Lenser v. McGowan*, 358 Ark. 423, 191 S.W.3d 506 (2004). Because I believe that the majority is violating this long-held tenet of our jurisprudence, I respectfully dissent.

Hannah, C.J., joins.