Fern AUSTIN *v.* CENTERPOINT ENERGY ARKLA,
Wayne D. Stinnett, President;  Arkansas Oklahoma Gas Corporation,
Michael C. Carter, President;  Arkansas Western Gas Company,
Charles V. Stevens, Vice-President;  Arkansas Public Service
Commission, Sandra Hochstetter, Chairman

05-72                                                    226 S.W.3d 814

Supreme Court of Arkansas
Opinion delivered February 2, 2006

*Roberts Law Firm, P.A.*, by: *Michael L. Roberts, Richard Quintas, Paul M. Gehring*, and *Caroline L. Curry*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *James M. Simpson* and *Seth M. Haines*; and *Jones Day*, by: *David A. Kutik*, for appellees CenterPoint Energy Arkla, Wayne D. Stinnett, Arkansas Western Gas Company, and Charles. V. Stevens.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Lawrence E. Chisenhall, Jr., Jim L. Julian*, and *Mark Hodge*, for appellee Arkansas Oklahoma Gas Corporation.

*Valerie F. Boyce*, for appellees Arkansas Public Service Commission and Sandra Hochstetter.

Tom Glaze, Justice. This appeal flows from our court's decision in *Arkansas Gas Consumers, Inc. v. Arkansas Public Service Commission*, 354 Ark. 37, 118 S.W.3d 109 (2003). In October of 2001, in recognition of the fact that the winter of 2000-2001 had been exceptionally harsh, the PSC published Order No. 1 in which it proposed a "Temporary Low Income Customer Gas Reconnection Policy" ("the Policy"). According to the Order, over 30,000 Arkansas gas customers had been disconnected for nonpayment of gas bills since the previous winter, with 29,500 still disconnected. The PSC stated that these customers owed past-due bills generally ranging between $260 and $350, but some customers owed in excess of $1000. Under existing regulations, those customers would have to make arrangements for all past-due amounts, and would also have to pay a reconnection fee and possibly a new service deposit. The PSC recognized that many of the disconnected customers were low-income families, and that, without assistance, they would face the winter of 2001-2002 without heat. The PSC's proposed Policy allowed qualifying customers to reconnect their natural gas service under certain conditions. In addition, the Policy permitted gas companies to recover their total bad-debt write-off for Policy participants

by imposing a surcharge on all of the utilities' customers statewide for a twelve-month period. *See Arkansas Gas Consumers*, 354 Ark. at 43-44.

Arkansas Gas Consumers, Inc. (Gas Consumers) a collection of non-residential gas utility customers, challenged the Policy, alleging that the PSC had exceeded its legislative authority by mandating the Policy. The PSC rejected Gas Consumers' challenge, and Gas Consumers appealed the PSC's decision to the court of appeals, which affirmed the PSC. Gas Consumers then petitioned this court for review. Upon that review, this court held in a 4-3 decision that the PSC had exceeded its authority. *Arkansas Gas Consumers*, 354 Ark. at 60. This court agreed with Gas Consumers' argument that the PSC's general authority to supervise and regulate public utilities does not include the authority to make public policy regarding low-income assistance or the authority to provide funds for such assistance by assessing all ratepayers for the bad-debt expense. *Id.* at 49. In short, this court held that the PSC did not have the legislative authority to establish the Policy. *Id.*

Shortly after this court's opinion in *Arkansas Gas Consumers* was handed down, appellant Fern Austin filed a class-action complaint, naming the PSC and three natural gas utility companies — appellees Centerpoint Energy Arkla (Arkla), Arkansas Oklahoma Gas Corp. (AOG), and Arkansas Western Gas Co. (AWG) — and alleging that she had paid the surcharge pursuant to the Policy. Austin brought her suit as one for an illegal exaction, contending that PSC and the gas companies had charged "an illegal tax on their paying customers in the form of a surcharge." In addition, Austin alleged that the PSC and the gas companies had violated the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105 (Supp. 2003), by "wrongfully violat[ing] Plaintiffs' due process property rights by taking money from Plaintiffs, in the form of a government mandated tax[.]" Austin's complaint sought restitution of the amounts paid, in the form of "a refund for the amount of the surcharge, with interest."

The various defendants all filed motions to dismiss, contending, among other things, that the circuit court did not have subject-matter jurisdiction over Austin's complaint, that Austin was required to exhaust her administrative remedies before proceeding in circuit court, and that Austin had failed to state facts

upon which relief could be granted.[1] After a hearing on September 8, 2004, the circuit court entered an order granting the defendants' motions to dismiss, finding that the assessment at issue was a rate, and not a tax; therefore, the PSC had exclusive jurisdiction to hear the matter. All other claims were dismissed for failure to state facts upon which relief could be granted.

Austin filed a timely notice of appeal, and now argues that the circuit court erred in three respects: 1) in finding that the PSC had jurisdiction to resolve Austin's claims; 2) in finding that Austin was required to exhaust her administrative remedies before initiating an action in circuit court; and 3) in determining that the filed rate and primary jurisdiction doctrines are applicable to this case.

In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002). Further, a trial judge must look only to the allegations in the complaint to decide a motion to dismiss. *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992).

In her first point on appeal, Austin argues that the PSC had no authority to resolve the claims she brought in her complaint. She raises three subpoints under this heading, arguing that the PSC had no authority to 1) resolve her "public rights" claim; 2) resolve her "private rights" claims; and 3) hear illegal exaction claims. None of her arguments has merit.

This court and the court of appeals have recognized that the legislature intended to place primary jurisdiction over consumer disputes in the PSC. *See Ozarks Electric Cooperative Corp. v. Harrelson*, 301 Ark. 123, 782 S.W.2d 570 (1990); *Brandon v. Arkansas Pub. Serv. Comm'n*, 67 Ark. App. 140, 992 S.W.2d 834 (1999). In addition, the PSC is a creature of the legislature and must act within the power conferred on it by legislative act. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 267 Ark. 550, 593 S.W.2d 434 (1980). The PSC's jurisdiction and adjudicative

---

[1] Although Austin's complaint was originally filed in Saline County Circuit Court, Austin moved to transfer the action to Pulaski County. The Saline County Circuit Court entered an order on April 28, 2004, granting Austin's motion.

authority are established in Ark. Code Ann. § 23-3-119 (Repl. 2002), which provides in relevant part as follows:

(a)(1) Any . . . customer of a public utility [or] any person unlawfully treated by a public utility . . . may complain to the commission in writing. The complaint shall set forth any act or thing done or omitted to be done by any public utility or customer in violation, or claimed violation, of any order, law, or regulation which the commission has jurisdiction to administer.

. . . .

(d) The commission shall then have the authority, upon timely notice, to conduct investigations and public hearings, to mandate monetary refunds and billing credits, or to order appropriate prospective relief as authorized or required by law, rule, regulation, or order. *The jurisdiction of the commission in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction.* However, the commission shall not have the authority to order payment of damages or to adjudicate disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

. . . .

(f)(1) It is the specific intent of the General Assembly . . . to vest in the Arkansas Public Service Commission *the authority to adjudicate individual disputes between consumers and the public utilities* which serve them when those disputes involve *public rights which the commission is charged by law to administer.*

(2) *Public rights which the commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes.* The commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

§ 23-3-119 (emphasis added).

However, the legislature has chosen not to limit the PSC's jurisdiction to the powers expressly set out in these statutes. *See, e.g., Brandon, supra* (holding that the PSC had the authority to hear

a class action involving allegations of violating the "least–cost gas purchasing statute," although such a power is not specifically enumerated in § 23-3-119, because such a claim would necessarily affect numerous ratepayers, and it was "logical" to conclude that the legislature intended for the Commission to have the authority to hear such actions).

Austin argues that her complaint alleges wrongdoing on the part of both the gas companies and the PSC. In addition, she contends that her complaint did not allege that the gas companies had violated "any order, law, or regulation which the commission has jurisdiction to administer"; rather, the wrong of which she complained was the PSC's unauthorized promulgation of the Policy and the gas companies' collection of monies thereunder. Austin asserts that nothing in the plain language of the statute gives the PSC jurisdiction to resolve disputes involving itself.

Austin's argument, however, appears premised on a fundamental mischaracterization of her own complaint. Although she argues that she has alleged wrongdoing on the part of the PSC, and that the trial court's ruling means that the PSC will be called on "to address the constitutionality and legality of its own actions," she is incorrect. This court has already decided the constitutionality and legality of the PSC's actions in *Arkansas Gas Consumers, supra*. Further, the relief Austin sought in her complaint was "restitution . . . in the form of a refund for the amount of the surcharge." Those surcharges were collected by the individual gas companies, not by the PSC, and the PSC has primary jurisdiction "to mandate monetary refunds and billing credits[.]" § 23-3-119(d).

In a second subpoint, Austin argues that the PSC had no authority to hear her "private rights" claims; here, she claims that she alleged the "violation of private rights found in the common law of contracts, torts, or property." For example, she points to her replevin claim, a tort claim that is generally cognizable in circuit court.[2] Austin also argues that the PSC did not have the authority to consider her civil rights claims, wherein she argued that the PSC and the gas companies violated her "due process property rights by

---

[2] *See* Ark. Code Ann. § 18-60-804 (1987) ("[i]n all cases ... wherein a party claims a right of possession of property in the possession of another, the party may apply to the circuit court or the municipal court for issuance of an order of delivery of the property"); *see also Drug Task Force v. Hoffman*, 353 Ark. 182, 114 S.W.3d 213 (2003).

taking money from [her], in the form of a government mandated tax, without the legislative authority to do so in violation of the Arkansas Constitution." On appeal, Austin argues that, because this court has "implicitly recognized" that a civil rights claim under § 16-123-105 is a tort claim, *see, e.g., Rudd v. Pulaski County Special School District,* 341 Ark. 794, 20 S.W.3d 310 (2000), the PSC had no jurisdiction to hear this claim.

However, despite Austin's use of the phrases "replevin," "tort," and "civil rights," Austin is nonetheless ultimately seeking a refund of the surcharges paid to the utility companies; those surcharges were assessed as part of the utility companies' rates. In reality, Austin's action is a dispute over rates, and the PSC has primary jurisdiction to consider Austin's claims under the plain language of § 23-3-119(d). This court has held that when a plaintiff's tort action is nothing more than a collateral attack on a utility's rate-making authority, the tort action impermissibly encroaches on the exclusive authority of the PSC to fix rates. *See Cullum v. Seagull Mid-South, Inc.,* 322 Ark. 190, 907 S.W.2d 741 (1995). In *Cullum,* the purported "tort" claim involved allegations that Arkla had engaged in fraud. However, because the damages sought necessarily required an assessment of what Arkla's rates would have been absent the allegedly fraudulent conduct, this court held that the PSC had exclusive jurisdiction to consider the matter: "To do otherwise would permit a direct attack on the authority of the PSC to fix rates." *Cullum,* 322 Ark. at 197-98. Accordingly, the mere labeling of a claim as a tort claim does not automatically deprive the PSC of authority to hear the complaint.

In her third subpoint, Austin argues that the PSC did not have the authority to consider her "illegal exaction" claim. In her complaint, under a heading captioned "Illegal Exaction," Austin alleged that the PSC, in implementing the Policy, ordered the gas companies to charge an illegal tax on their paying customers in the form of a surcharge. Austin's complaint stated further as follows: "This government mandated tax was intended and had the effect of raising revenue in order to further the Gas Companies' ability to reconnect Arkansas gas customers that had been disconnected due to non-payment of gas bills." On appeal, Austin continues her argument that the money collected by the gas companies was an illegal tax, for which an illegal-exaction claim is proper. Because the surcharge was a "tax," according to Austin, she had a valid illegal-exaction claim, which can only be heard in circuit court.

*See Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997) (holding that circuit courts may consider illegal-exaction challenges).

However, Austin's argument is once more premised on a flawed foundation. In order for Austin to have a valid illegal-exaction claim, there must necessarily be a tax. In *McGhee v. Arkansas State Board of Collection Agencies*, 360 Ark. 363, 201 S.W.3d 375 (2005), this court explained that two types of illegal-exaction cases can arise under Ark. Const. art. 16, § 13: 1) "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and 2) "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *See also City of West Helena v. Sullivan*, 353 Ark. 420, 108 S.W.3d 615 (2003); *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992).

The surcharge imposed by the gas companies at the insistence of the PSC was simply not a tax. A "tax" is a "burden imposed by a government upon a taxpayer for the use and benefit of that government." *City of Hot Springs v. Vapors Theatre Restaurant, Inc.*, 298 Ark. 444, 769 S.W.2d 1 (1989). *Black's Law Dictionary* defines a tax as a "monetary charge *imposed by the government* on persons, entities, or property *to yield public revenue.*" *Black's Law Dictionary* 1498 (8th ed. 2004) (emphasis added). In the instant case, the surcharges were not levied by the PSC, nor were the monies paid to the PSC. Rather, the surcharges were paid by gas customers to the gas companies, which are privately-owned corporate entities, not arms of the State. In addition, the surcharges did not yield public revenue; they were a mechanism by which the gas companies could recover some of the bad debt incurred as a result of the implementation of the Policy. Accordingly, Austin did not have a valid illegal-exaction claim to be heard in circuit court.

In her second major point on appeal, Austin argues that she should not have been required to exhaust her administrative remedies before filing her claims in circuit court; she alleges four reasons in support of this argument: 1) the PSC lacked-subject matter jurisdiction to adopt and implement the challenged policy; 2) she did not have to exhaust her administrative remedies prior to filing her civil rights and illegal-exaction claims in circuit court; 3) pursuit of her claims before the PSC would be futile; and 4) the PSC is biased against constitutional or statutory challenges to the Policy.

Generally, the doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Old Republic Surety Company v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005); *Cummings v. Big Mac Mobile Homes, Inc.*, 335 Ark. 216, 980 S.W.2d 550 (1998). A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *McGhee, supra; Dixie Downs, Inc. v. Arkansas Racing Comm'n*, 219 Ark. 356, 242 S.W.2d 132 (1951). The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot*, 347 Ark. 1, 59 S.W.3d 430 (2001).

There are, however, exceptions to the exhaustion requirement. For instance, this court has recognized that exhaustion of administrative remedies is not required where no genuine opportunity for adequate relief exists, or where irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or where an administrative appeal would be futile. *Cummings*, 335 Ark. 216, 980 S.W.2d 550; *Barr v. Arkansas Blue Cross & Blue Shield, Inc.*, 297 Ark. 262, 761 S.W.2d 174 (1988). In other words, inadequate or futile administrative remedies need not be exhausted before other remedies are pursued. *Cummings*, 335 Ark. 216, 980 S.W.2d 550.

Austin first reasons that she need not exhaust her administrative remedies "because the PSC has already been found by this court to have exceeded [its] statutory authority when it adopted the Policy and authorized the collection of funds pursuant to that Policy." In other words, she contends that, because the orders adopting the Policy were unlawful, the PSC had no jurisdiction to "adjudicate claims arising from . . . the lawful rules, regulations, and orders entered by the commission in the execution of the statutes," under § 23-3-119(f)(2).

Austin relies on *Middlewest Motor Freight Bureau v. United States*, 433 F.2d 212 (8th Cir. 1970), asserting that the case holds that, "once an order of an administrative agency is found to be unlawful, a claim in the judiciary to recover monies collected pursuant to that order is not barred." However, *Middlewest* is wholly inapposite. The case involved rates and tariffs set by the Interstate Commerce Commission, and the statutes relevant to

that case permitted "reparations [to] be recovered from rail carriers through *either administrative or judicial proceedings.*" *Middlewest*, 433 F.2d at 232.

Moreover, Austin has once again misconstrued the scope of the PSC's duties in the event of a suit, like this one, that seeks a refund of the surcharges paid pursuant to the Policy. There is no need for the PSC to determine whether the Policy was unlawful; that decision has already been made by this court in *Arkansas Gas Consumers*. The PSC will only be required to determine the proper amount of any refund, an act which it clearly has the jurisdiction to undertake. *See* § 23-3-119(d).

Austin's next reason is that she is not required to exhaust her administrative remedies before filing a civil rights or illegal-exaction claim in circuit court. As just discussed, Austin did not have a valid illegal-exaction claim, because the surcharge was simply not a tax. In addition, Austin's "civil rights" claim was premised on a claim that the PSC and the gas companies had violated her "due process property rights by taking money from [her], in the form of a government mandated tax, without the legislative authority to do so[.]" Once again, though, the surcharge was not a tax. In addition, as for her replevin claim, Austin sought a refund of the money she paid to the gas company. The PSC clearly had jurisdiction to address Austin's refund claim.

For her third reason, Austin claims that she should not have been required to exhaust her administrative remedies because "pursuit of her claims before the PSC is futile." *See Staton v. American Manufacturers Mutual Ins. Co.*, 362 Ark. 96, 207 S.W.3d 456 (2005); *Cummings, supra* (when a plaintiff prays for relief that is clearly not available at the administrative level, exhaustion of other available administrative remedies is not required). Austin argues that, because the PSC adopted a Policy that was unconstitutional, despite being aware of concerns about the Policy's constitutionality, it is unlikely that the PSC could legitimately address Austin's constitutional arguments. She also claims that she should not be required to exhaust her administrative remedies before the PSC, because the PSC would be biased against her constitutional and statutory challenges to the Policy because it "has clearly predetermined the issues raised by [her] claims."

Austin's concerns are unfounded. This court has told the PSC that it did not have the legislative authority to impose the surcharges. The only issue that is left for discussion is how much of

a refund the utility customers are entitled to, should someone bring such a case before the PSC. Simply stated, the PSC does not have the option of ignoring the findings of this court if any action is filed seeking a refund of the amounts paid because of the Policy.

Fundamentally, Austin's argument ignores the principles announced in *Withrow v. Larkin*, 421 U.S. 35 (1975), wherein the Supreme Court wrote as follows:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow*, 421 U.S. at 47. The Court also noted that "no decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law." *Id.* at 48. The Court continued, stating that, "[i]n fact, judges frequently try the same case more than once and decide identical issues each time[.]" *Id.* Austin's argument falls far short of overcoming the "presumption of honesty and integrity," and her unsupported and speculative fears about the "potential for bias" are not sufficient to render unnecessary the requirement that she exhaust her administrative remedies.

In her final argument on appeal, Austin argues that the trial court erred in its conclusion that "the assessment at issue was a rate . . . not a tax." Austin contends that this case does not involve a challenge to a rate; accordingly, she argues, neither the "filed rate doctrine" nor the "primary jurisdiction doctrine" should be applied in this case.

The filed-rate doctrine, adopted by this court in *Cullum v. Seagull Mid-South, Inc., supra,* forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate federal regulatory authority. *Cullum*, 322 Ark. at 196 (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 954 F.2d

485, 488 (8th Cir.)). The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue. *Id.* In *Cullum*, this court held that, under the filed rate doctrine, the circuit court lacked jurisdiction "over the plaintiff's civil causes of action in tort which necessarily required an assessment of damages measured by what was the filed rate with the PSC and what the rate should have been. To do otherwise would permit a direct attack on the authority of the PSC to fix rates." *Cullum*, 322 Ark. at 198.

Austin contends that the filed rate doctrine is inapplicable, and thus the PSC does not have exclusive jurisdiction, because her case does not involve a challenge to a "rate." However, the controlling statutes define "rates" broadly:

> "Rate" means and includes every compensation, charge, fare, toll, rental, and classification, or any of them, demanded, observed, charged, or collected by any public utility for any service, products, or commodity offered by it as a public utility to the public and means and includes any rules, regulations, practices, or contracts affecting any compensation, charge, fare, toll, rental, or classification;

Ark. Code Ann. § 23-1-101(10) (Repl. 2002).

Austin argues that the amounts collected by the gas companies "were not collected in connection with a service, product, or commodity," and therefore, they were not rates. However, the surcharge implemented by the Policy was intended to compensate the gas companies for bad debt incurred as a result of the implementation of the Policy. In *Arkansas Gas Consumers*, this court appears to have recognized that the utilities' existing rate bases (that is, prior to the implementation of the Policy) included an allowance for bad debt. *Arkansas Gas Consumers*, 354 Ark. at 59 (noting Gas Consumers' argument on this issue, wherein Gas Consumers asserted that the additional direct payment under the Policy would constitute an impermissible double recovery of bad debt). Thus, the surcharge was in fact a "compensation [or] charge . . . demanded, . . . charged, or collected by any public utility for any service[.]"

This court's conclusion that the rate was unlawful does not make it any less of a rate while it was being charged and collected by the gas companies. Once the PSC issued the Order containing the Policy, the gas companies were bound to follow it under Ark. Code Ann. § 23-3-421(c)(1) (Repl. 2002), which provides that

orders of the PSC "shall take effect and become operative immediately upon the service thereof, unless otherwise provided, and shall continue in force either for a period which may be designated therein or until changed or revoked by the commission, or vacated upon review."

■   Moreover, Austin sought a refund of the monies paid pursuant to the Policy. The only way to determine the proper amount of the refund would be to "measure[ ] . . . what was the filed rate with the PSC and what the rate should have been." *Cullum*, 322 Ark. at 198. Accordingly, the filed rate doctrine was properly applied to conclude that jurisdiction was not proper in the circuit court.

Finally, Austin argues that the primary jurisdiction doctrine is inapplicable. The doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63 (1959). The doctrine applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views. *Id.* at 64. The *Western Pacific* Court continued as follows:

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. The two factors are part of the same principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation

of business entrusted to a particular agency are secured, *and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.*

*Id.* at 64-65 (emphasis added) (internal citations omitted).

This court has acknowledged this reasoning in numerous cases. *See, e.g., Teston v. Arkansas St. Bd. of Chiropractic Examiners,* 361 Ark. 300, 206 S.W.3d 796 (2005) (administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies); *Williams v. Arkansas State Board of Phys. Therapy,* 353 Ark. 778, 120 S.W.3d 581 (2003). This court rephrased this premise in *McGhee v. Mid South Gas Co.,* 235 Ark. 50, 357 S.W.2d 282 (1962), as follows:

> Orderly procedure and administrative efficiency *demand that the regulatory body be vested with authority to make preliminary determination of legal questions which are incidental and necessary to the final legislative act.* Otherwise endless confusion would result because different phases of the same case might be pending before the Commission and the courts at one time.

*McGhee,* 235 Ark. at 57 (emphasis added).

With respect to the PSC, the legislature has expressly given that body jurisdiction to "mandate monetary refunds and billing credits, or to order appropriate prospective relief as authorized or required by law, rule, regulation, or order." § 23-3-119(d). This jurisdiction "is primary and shall be exhausted before a court of law or equity may assume jurisdiction." *Id.* Austin's complaint sought a monetary refund; therefore, primary jurisdiction of her claim is in the PSC.

Austin further argues that the primary jurisdiction doctrine is inapplicable because she is not challenging the reasonableness of a rate or rule, but is instead challenging the legality of the Policy. Her argument is simply of no avail, however, because, as stated repeatedly above, this court has *already decided the legality of the Policy.* In sum, once more, she seeks a refund of rates that were paid pursuant to a policy that was later determined to be invalid;

regardless of this determination of invalidity, however, the rates were nonetheless rates, and exclusive, primary jurisdiction of questions concerning rate refunds lies with the PSC.

Affirmed.

DICKEY, J., not participating.