CENTERPOINT ENERGY, INC., Centerpoint Energy
Resources Corp., Entex Gas Marketing Co., Centerpoint
Energy Field Services, Inc., and Centerpoint Energy Pipeline
Services, Inc. *v.* MILLER COUNTY CIRCUIT COURT,
The Honorable James Scott Hudson, Jr., Weldon Johnson,
and Angela Sullivan Engledowl

07-924                                                    276 S.W.3d 231

Supreme Court of Arkansas
Opinion delivered February 14, 2008

*Baker Botts L.L.P.,* by: *B. Daryl Bristow, Mark R. Robeck, Macey Reasoner Stokes, Jason M. Ryan,* and *Thomas R. Phillips; Jackson Walker L.L.P.,* by: *Richard E. Griffin; Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* by: *J. Dennis Chambers;* and *Friday, Eldredge & Clark, LLP,* by: *Robert S. Shafer,* for petitioners.

*Patton, Roberts, McWilliams & Capshaw,* by: *Phillip N. Cockrell, Richard A. Adams,* and *Shivali Sharma; Keil & Goodson,* by: *John C. Goodson* and *Matt Keil; Nix, Patterson & Roach LLP,* by: *C. Cary Patterson* and *Michael B. Angelovich; James M. Pratt, Jr. P.A.,* by: *James M. Pratt, Jr.;* and *Eggleston & Briscoe,* by: *Wade Vandiver* and *Bill Eggleston,* for respondents.

D ONALD L. CORBIN, Justice. This is the second time that Petitioners Centerpoint Energy, Inc., Centerpoint Energy Resources Corp. (f/k/a Reliant Energy Resources Corp.), Entex Gas Marketing Co., Centerpoint Energy Field Services, Inc., and Centerpoint Energy Pipeline Services, Inc. (collectively Centerpoint), are before this court seeking an extraordinary writ to stop the Miller County Circuit Court from acting on the complaint styled *Weldon Johnson, et al. v. Centerpoint Energy, Inc., et al.,* No. 04-327-2.[1] *See Centerpoint Energy, Inc. v. Miller County Circuit Court,* 370 Ark. 190, 258 S.W.3d 336 (2007) (*Centerpoint I*). Now, Centerpoint has

---

[1] As in *Centerpoint I,* the class still has not been certified.

requested that we issue a writ of mandamus, a writ of prohibition, and a writ of certiorari directing the circuit court to enforce the mandate issued in *Centerpoint I*, and to dismiss the second amended complaint filed following the issuance of that mandate.

In support of this petition, Centerpoint argues that: (1) the circuit court exceeded its jurisdiction in failing to recognize, obey, and execute our mandate and opinion in *Centerpoint I* such that writs of mandamus, prohibition, and certiorari should be granted; (2) as a result of our issuance of a writ of prohibition in *Centerpoint I*, venue is no longer proper in the circuit court such that a writ of prohibition is again warranted; and (3) because this court held that Respondents Weldon Johnson and Angela Sullivan Engledowl (collectively Respondents) complain about their gas rates, the Arkansas filed-rate doctrine renders the circuit court wholly without jurisdiction to adjudicate Engledowl's claims such that a writ of prohibition is proper. As this case involves extraordinary writs, jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(3). For the reasons set forth below, we grant the writ of mandamus and the writ of prohibition. The petition for certiorari is moot.

The underlying facts are set out in *Centerpoint I*. There, Centerpoint argued, in part, that a writ of prohibition should be issued because the state regulatory agencies, including the Arkansas Public Service Commission (APSC) and the Texas Railroad Commission (TRRC), have exclusive jurisdiction over the claims asserted by Respondents on behalf of the proposed class, and that the circuit court is wholly without jurisdiction. Prior to addressing Centerpoint's arguments, we held that our jurisdiction was

> confined to the issue of the jurisdiction of the APSC over Arkansas customers, who are potential class members. We decline[d] to adjudicate the issue of the jurisdiction of the TRRC under Texas law vis-a-vis Texas ratepayers. Accordingly, we den[ied] the writ of prohibition with respect to the potential Texas class members and the TRRC.

*Id.* at 197, 258 S.W.3d at 340-41. We then went on to address Centerpoint's contention that the circuit court was wholly without jurisdiction because the APSC has sole and exclusive jurisdiction over disputes between customers and utility companies over public rights, such as natural gas rates.

In granting the writ with respect to the Arkansas consumers represented by Johnson, we concluded that there is clear authority given to the APSC by the Arkansas General Assembly for "sole and

exclusive jurisdiction" over Respondents' claims as they relate to Arkansas consumers, but not as they relate to Texas consumers under Texas law. Specifically, we summarized the case as follows:

> In essence, [Respondents] are complaining that they are being charged too much for natural gas, and their actual damages can only be measured by comparing the rates they have been charged and the rates they should have been charged absent the alleged fraudulent conduct. This squarely falls within the exclusive jurisdiction of the APSC under *Cullum* [*v. Seagull Mid-South, Inc.*, 322 Ark. 190, 907 S.W.2d 741 (1995)], and *Austin* [*v. Centerpoint Energy Arkla*, 365 Ark. 138, 226 S.W.3d 814 (2006)]. The respondents attempt to disguise their claims by labeling them as common law tort claims, but this court must look beneath the labels and inquire into the true nature of the complaint. *See Austin, supra.* In doing so, it is clear that the complaint is essentially that Centerpoint has overcharged [Respondents] and proposed class members. This is precisely the kind of dispute that should be decided by the APSC.

*Id.* at 202-03, 258 S.W.3d at 344-45.

We delivered our *Centerpoint I* opinion on June 7, 2007, and our mandate was issued on June 26, 2007.[2] On June 27, 2007, Centerpoint filed two motions in circuit court. First, they filed a joint renewed motion to dismiss for lack of jurisdiction and, in the alternative, a motion to abate or stay any further proceedings. Citing *Centerpoint I*, Centerpoint requested that the circuit court dismiss the case in its entirety because it was without jurisdiction to determine the fundamental threshold question of whether the TRRC has exclusive jurisdiction over Engledowl's claims and because those claims were barred by the filed-rate doctrine as adopted in Arkansas. Alternatively, Centerpoint asked the circuit court to decline to exercise jurisdiction, or to stay further proceedings pending the outcome of a declaratory judgment action they had filed in Texas State District Court to resolve the question of the scope of the TRRC's jurisdiction over Engledowl's asserted claims. Centerpoint also filed a joint motion to dismiss for improper venue in accordance with Ark. R. Civ. P. 12(b)(3). Specifically, they argued that, following *Centerpoint I* and the

---

[2] Both the opinion and mandate were filed in the circuit court on June 27, 2007.

dismissal of Johnson's claims, the circuit court should dismiss this case in its entirety because venue is now improper.[3]

In response to the renewed motion to dismiss for lack of jurisdiction, Respondents argued that *Centerpoint I* did not dismiss any parties or any claims, and that *Centerpoint I* did not change the fact that this case is about fraud and not filed rates. As to Centerpoint's improper-venue motion, Respondents asserted that Centerpoint had waived any right to venue, as well as that *Centerpoint I* did not negate proper venue in Miller County. Respondents also filed a motion for leave to file a second amended class-action complaint on July 20, 2007.

On July 25, 2007, a hearing was held on Centerpoint's motions. Following arguments, the circuit court denied both of the motions to dismiss, but stayed all claims by Respondents as they related to Arkansas customers pending further proceedings before the APSC. The court explicitly refused to dismiss Johnson and found that venue was proper based on Johnson's retention in the complaint.

Following the hearing, the circuit court granted Respondents' motion to file a second amended complaint, which they filed on August 2, 2007. Then, on August 7, 2007, the circuit court issued an order denying the motions to dismiss and staying the claims asserted on behalf of Arkansas customers to allow the APSC an opportunity to explore those claims. As to the joint renewed motion to dismiss for lack of jurisdiction, the circuit court agreed with Respondents and found that

> [b]ased upon the Court's interpretation of the Arkansas Supreme Court's opinion issued on June [7],[4] 2007, and the mandate issued on June 26, 2007, neither Angela Engledowl nor Weldon Johnson have been dismissed as parties plaintiff; and, further, the claims they have asserted have not been dismissed. However, in accordance with the direction provided [in *Centerpoint I*], the Court ORDERS that the claims asserted on behalf of the Arkansas customers are hereby STAYED to allow the [APSC] an opportunity to explore those claims. The Court appreciates the [APSC] has primary juris-

---

[3] The motion also notes that Centerpoint had no basis for challenging venue until after the *Centerpoint I* decision.

[4] The circuit court incorrectly referred to June 6, 2007, as the date the *Centerpoint I* opinion was issued.

diction of the claims of Weldon Johnson and the Arkansas customers, as they relate to the regulated entities. The Court further recognizes that the [APSC] may in its discretion: determine and dispose of all those claims; determine that it lacks jurisdiction of some of those claims; or, determine that complete relief could not be afforded to the Arkansas customers by the [APSC]. When and if the [APSC] releases its primary jurisdiction over those claims, in whole or in part, the Court will entertain any appropriate motion to lift this stay as to any claims released back to this Court pursuant to the ruling of the Arkansas Supreme Court.

With regard to the joint motion to dismiss for improper venue, the circuit court again agreed with Respondents and denied the motion

as untimely, and because neither Angela Engledowl, nor Weldon Johnson, nor the claims they have asserted, have been dismissed, and because the claims set forth in [Respondents'] pleadings include allegations of fraud and conspiracy to commit fraud and because the fraudulent acts are alleged to have occurred and to have been communicated, in part, in Miller County, Arkansas.

On September 5, 2007, Centerpoint filed the present petition for writs of mandamus, prohibition, and certiorari. Respondents responded by filing a motion to expedite submission and to dismiss Centerpoint's petition for lack of ripeness. On October 4, 2007, we granted the motion to expedite, but ordered that the motion to dismiss be submitted with the case. We deny the motion to dismiss at this time. The petition is now before this court.

Centerpoint first argues that the circuit court exceeded its jurisdiction in failing to recognize, obey, and execute this court's mandate and opinion in the prior prohibition proceeding. Specifically, they claim that *Centerpoint I* established as the law of the case that the circuit court lacks subject-matter jurisdiction over Respondents' claims as they pertain to Arkansas customers, because those rate-related claims lie within the sole and exclusive jurisdiction of the APSC. Centerpoint asserts that writs of mandamus, prohibition, and certiorari are warranted to enforce our mandate in *Centerpoint I* because the circuit court has exceeded its jurisdiction by disregarding the opinion and mandate of this court, and they have no other adequate remedy at law. Centerpoint further argues that there is well-established precedent that an extraordinary writ should issue to enforce the proper fulfillment of the directions of this court and to correct a circuit court's failure to

recognize, obey, and execute an appellate court's opinion and mandate.[5] For the reasons set forth below, we agree that a writ of mandamus is warranted.

The purpose of a writ of mandamus is to enforce an established right or to enforce the performance of a duty. *See Weaver v. Simes*, 365 Ark. 289, 229 S.W.3d 15 (2006). A writ of mandamus is issued by this court only to compel an official or judge to take some action. *Id.* When requesting a writ of mandamus, a petitioner must show a clear and certain right to the relief sought and the absence of any other adequate remedy. *Id.* However, a writ of mandamus will not lie to control or review matters of discretion. *Id.*

In *Centerpoint I*, we concluded that the asserted claims involved rates and held that

> the APSC has *sole and exclusive jurisdiction* over [Respondents'] claims as they relate to Arkansas customers but not as they relate to Texas customers under Texas law. *Without question, Mr. Johnson's claims should be explored by the APSC.* To repeat, state law provides that the jurisdiction of the APSC "in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction." Ark. Code Ann. § 23-3-119(d) (Repl. 2002).

370 Ark at 203-04, 258 S.W.3d at 345 (emphasis added). We then granted the writ of prohibition with regard to the issue of jurisdiction of the APSC over Arkansas customers, who are potential class members to be represented by Johnson.

A writ of prohibition is issued when a circuit court is *wholly without jurisdiction. See Weaver*, 365 Ark. 289, 229 S.W.3d 15. By its very nature, *Centerpoint I* meant that the circuit court did not and does not have jurisdiction over the Arkansas claims. Consequently, the nature and spirit of our ruling required that the circuit court dismiss the case inasmuch as it relates to claims asserted on behalf of the Arkansas consumers. Put another way, Johnson's claims against Centerpoint were to be dismissed so that they could be brought before the APSC. This is not what occurred.

---

[5] In support of this proposition, Centerpoint cites to *Wal-Mart Stores, Inc. v. Regions Bank Trust Department*, 356 Ark. 494, 156 S.W.3d 249 (2004); *Fulkerson v. Thompson*, 334 Ark. 317, 974 S.W.2d 451 (1998) (per curiam); *Arkansas Baptist College v. Dodge*, 189 Ark. 592, 74 S.W.2d 645 (1934); *Hopson v. Frierson*, 106 Ark. 292, 152 S.W. 1008 (1912); *Nunn v. Robertson*, 80 Ark. 350, 97 S.W. 293 (1906); and *Baxter v. Brooks*, 29 Ark. 173 (1874).

Here, with respect to Johnson's claims, the circuit court orally ruled:

> First, and with complete respect and deference to the Arkansas Supreme Court, this court will stay all claims by [Respondents] as they relate to Arkansas customers, pending further proceedings before the [APSC] and its decision or decisions, whether they be final and complete disposition of the merits of those claims, or whether they be partial disposition of those claims, as yet the [APSC] should determine, and if the [APSC] determines that it lacks jurisdiction to hear certain aspects of those claims or assertions, or that it cannot grant complete relief as to those claims of [Respondents], then those others would, when I receive word of that decision, or those rulings, presumably, those would come back to this court.

The circuit court then clarified that it was not dismissing Johnson's claims at that time. Moreover, in the August 7 order, the court ruled "that the claims asserted on behalf of the Arkansas customers are hereby STAYED to allow the Arkansas Public Service Commission an opportunity to explore those claims." The circuit court also noted that the APSC had primary jurisdiction over the claims of Johnson and the Arkansas consumers.

█ This was clearly outside of the circuit court's power and jurisdiction. Specifically, a court cannot retain jurisdiction over a proceeding for which it does not have jurisdiction in the first place. We made it very clear in *Centerpoint I* that the APSC had sole and exclusive jurisdiction over Johnson's claims involving Arkansas customers. Accordingly, the circuit court's refusal to dismiss Johnson and its decision to stay the claims asserted on behalf of Arkansas customers cannot be viewed as actions taken in compliance with the *Centerpoint I* ruling. Because these actions were outside of the purview of our mandate, and since we have already granted a writ of prohibition informing the circuit court that it is without jurisdiction over the Arkansas claims, we grant a writ of mandamus and direct the circuit court to dismiss Johnson as it should have following *Centerpoint I.*[6]

---

[6] Because we grant the writ of mandamus, Centerpoint's arguments relating to the issuance of a writ of prohibition and a writ of certiorari on this issue are moot.

Centerpoint next argues that because the writ of prohibition entered in *Centerpoint I* required the circuit court to dismiss Johnson from the case, no basis exists for venue over the only remaining named plaintiff, Engledowl. Specifically, they claim that once the mandate is properly enforced and Johnson is dismissed, the undisputed facts demonstrate that there is no basis for venue over the claims of Engledowl, a Texas resident. Centerpoint further argues that a writ of prohibition can be issued when venue is improper as to a party. Respondents counter that Centerpoint cannot raise a new defense, such as an objection to venue, at this time because it had been waived.

Under Ark. R. Civ. P. 12(b), a party must assert the defense of improper venue in its answer or in a motion filed prior to or simultaneously with its answer. *See Gailey v. Allstate Ins. Co.*, 362 Ark. 568, 210 S.W.3d 40 (2005). If a party fails to do this, he has waived this defense. *Id.* Specifically, Ark. R. Civ. P. 12(h)(1) provides, in pertinent part, that

> [a] defense of . . . improper venue . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in the original responsive pleading.

Arkansas Rule of Civil Procedure 12(g) provides that

> [a] party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule, but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof any of the grounds therein stated.

It is undisputed that Centerpoint did not raise the defense of improper venue in their first motion to dismiss. However, Centerpoint argues that they have not waived this defense because is was not available at the time they filed their first motion, as Johnson had not yet been dismissed from the case and his residence in Miller County, Arkansas, provided venue for the action under Ark. Code Ann. § 16-55-213 (Repl. 2005). Specifically, they contend that it was only after the *Centerpoint I* decision and mandate that the defense of improper venue became available. Upon review, Centerpoint is correct in their assertion that the

circumstances of this case are such that they did not waive the defense of improper venue by failing to address it in their first motion to dismiss because it was not "then available."

Although this court has never addressed the question now before us, several federal courts have examined this issue in relation to Fed. R. Civ. P. 12, which is substantially the same as our Rule 12. In *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983), the First Circuit explained:

> A close reading of Rule 12, however, does reveal an exception to this strict waiver rule that is applicable here. Rule 12(g) operates in conjunction with Rule 12(h) to require that all defenses permitted to be raised by motion must be included in the same motion. This requirement, however, extends only to defenses "then available." Fed. R. Civ. P. 12(g). This language of Rule 12(g) logically also applied to Rule 12(h) with the result that under that subsection defendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move.

Moreover, the conclusion that a party has not waived a defense is reinforced if a party moves quickly to raise their new defense upon learning of it. *Id. See also Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127 (W.D.N.Y. 1997) (explaining that courts frequently excuse the failure to assert an affirmative defense which was not available at the time of the defendant's original answer); *Holzsager v. Valley Hosp.*, 646 F.2d 792 (2d Cir. 1981) (holding that a party cannot be deemed to have waived a defense not known to be available at the time it made its first defensive motion, especially when it raised the objection as soon as the party became aware of it).

In applying this logical reading of Rule 12 to the present case, it only follows that Centerpoint did not waive the defense of improper venue if it was not available when it made its first motion to dismiss for lack of subject-matter jurisdiction, and they acted quickly upon learning of its availability. Here, Centerpoint raised the defense of improper venue at the earliest availability. It is undisputed that Johnson's residence in Miller County had been used as the basis for venue in this case. Therefore, it follows that a challenge to venue only became available after he was dismissed from the case. *See Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362 (D. Del. 2005) (holding that a defendant could not, in good faith, raise the defense of lack of personal jurisdiction until after the plaintiff voluntarily dismissed a portion of its claims);

*McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 644 F. Supp. 580 (E.D. Mich 1986) (holding that the issue of personal jurisdiction only became available as a defense when the plaintiff dismissed the sole nondiverse party). *See also Daniel*, 988 F. Supp. 127 (holding that the defense of improper venue did not become available until the plaintiffs filed a second amended complaint which changed the nature of the suit, including the arguable locus of relevant events).

■ Moreover, there is no merit to Respondents' contention that this venue challenge has been available to Centerpoint since the onset of this litigation because,

> [i]f Petitioners' original Rule 12(b) motions in the Trial Court were made in the sincere belief that the Circuit Court was without subject matter jurisdiction (and the lack of subject matter jurisdiction would have required [Respondents'] dismissal), they and their counsel could not have failed to understand and be "aware" that a venue challenge was not only "available" but naturally followed such a conclusion.

It is illogical to conclude that the mere fact that Centerpoint previously sought to dismiss all claims filed against it for lack of subject-matter jurisdiction made them aware of the defense of improper venue should any of those claims be dismissed. Specifically, in *Centerpoint I*, Centerpoint was challenging the subject-matter jurisdiction as to *all* claims, but we only granted the writ of prohibition as to those claims brought by Johnson on behalf of Arkansas consumers. Thus, Johnson was not dismissed from the case until after *Centerpoint I*, such that the defense of improper venue only became available at that time. To expect Centerpoint to have the clairvoyance demanded by Respondents is simply inconsistent with the doctrine of waiver discussed above, especially when Centerpoint raised the issue soon after it became available. *See Glater*, 712 F.2d 735; *Holzsager*, 646 F.2d 792. As such, the issue of improper venue was not waived and can be addressed.

As stated above, *Centerpoint I* established that the circuit court did not have jurisdiction over Johnson's claims involving Arkansas consumers, such that Centerpoint is correct in their argument that the proper enforcement of the mandate requires Johnson's dismissal. Because of Johnson's dismissal, Centerpoint argues that venue is not proper under Ark. Code Ann. § 16-55-213(a)(3)(A) (Repl. 2005), Ark. Code Ann. § 16-55-213(b)(1)

(Repl. 2005), or Ark. Code Ann. § 16-60-113(b) (Repl. 2005), and a writ of prohibition should issue.

The purpose of a writ of prohibition is to prevent a court from exercising a power not authorized by law when there is no adequate remedy by appeal or otherwise. *See Ark. Game & Fish Comm'n v. Harkey*, 345 Ark. 279, 45 S.W.3d 829 (2001). As stated earlier, a writ of prohibition is extraordinary relief that is only appropriate when the trial court is wholly without jurisdiction. While jurisdiction is the power and authority of the court to act, venue is the place where the power to adjudicate is to be exercised. *Id.* Venue has thus often been characterized as procedural rather than jurisdictional. *Id.* However, even though procedural, this court has a long history of granting the writ when venue is improper as to a party. *Id.* This is so because this court characterizes the venue issue as one of jurisdiction over the person, the improper assertion of which in that instance, justifies issuance of the writ. *Id.* Where the issue of the writ of prohibition alleges improper venue, this court will grant the writ only when there are no disputed facts regarding venue. *Premium Aircraft Parts, LLC v. Circuit Court of Carroll County*, 347 Ark. 977, 69 S.W.3d 849 (2002). Furthermore, we will look only to the pleadings to determine if a complaint lacks sufficient facts to support venue, and we ascertain the character of the action and the primary right asserted from the face of the complaint. *Id.*

It is this court's fundamental duty to give effect to the legislative purpose set by the venue statutes. *Id.* The venue statutes at issue here are sections 16-55-213(a)(3)(A) and (b)(1), and section 16-60-113(b). Section 16-55-213 states, in pertinent part:

> (a) All civil actions other than those mentioned in 16-60-101 – 16-60-103, 16-60-107, 16-60-114, and 16-60-115, and subsection (e) of this section must be brought in any of the following counties:
>
> . . . .
>
> (3)(A) The county in which the plaintiff resided.
>
> . . . .
>
> (b)(1) The residence of any properly joined named class representative or representatives may be considered in determining proper venue in a class action.

Section 16-60-113(b) provides:

> Any action for any type of fraud may be brought:
>
> (1) In the county where any one (1) plaintiff resides or any one (1) defendant is located;
>
> (2) In the county where one (1) or more of the acts utilized to induce, perpetuate, or conceal the fraud was performed; or
>
> (3) In the county from which an act or one (1) or more of the fraudulent acts or part of a scheme to defraud was originated or was communicated from or into by telephone, mail, or other means orally or in writing.

In the present case, Centerpoint is challenging Respondents' contention that venue lies in Miller County. Specifically, in their second amended complaint filed after *Centerpoint I*, Respondents asserted that

> [v]enue is proper in the county of residence of any properly joined name[d] class representative. Plaintiff Johnson resides in Miller County, Arkansas. Therefore, venue is proper in Miller County, Arkansas. Moreover, venue is proper in Miller County, Arkansas under Ark. Code Ann. [§] 16-60-113(b) because all Defendants have engaged in an elaborate scheme to defraud, and a conspiracy to commit fraud, through conduct that has, at least in part, occurred in Miller County. Defendants unlawfully manipulated and fraudulently misrepresented the cost of gas, and part of the scheme to defraud was perpetrated and communicated in writing in Miller County, Arkansas, through the monthly statements that were mailed to Weldon Johnson and other customers located in Miller County.

Centerpoint argues that, from the face of the complaint, venue is improper because *Centerpoint I* dismissed Johnson from the case and venue cannot be established through Engledowl. This is correct.

■ First, venue is improper under section 16-55-213(a)(3)(A) and (b)(1) because both of these statutes place venue in the county of the plaintiff's residence. With Johnson's dismissal, Engledowl is the sole remaining plaintiff. It is undisputed that Engledowl is a resident of Bowie County, Texas. Accordingly, venue cannot lie in Miller County under either section 16-55-213(a)(3)(A) or (b)(1) because Engledowl is a resident of Texas and *not* Miller County.

Neither is venue proper under section 16-60-113(b). Just as with the previous venue statutes, Respondents maintain that venue is proper based upon alleged fraudulent activity directed at Johnson and other Miller County residents. Yet again it must be noted that Johnson is no longer a party to this action and therefore *cannot* be used to establish venue. There is nothing on the face of the complaint connecting any alleged fraudulent activity perpetrated by Centerpoint in Miller County in relation to Engledowl and Texas consumers; therefore, Miller County is the improper venue. Accordingly, the writ of prohibition is granted, and we direct the circuit court to dismiss the complaint in its entirety.[7]

Writ of mandamus granted; writ of prohibition granted; writ of certiorari moot.

Motion to dismiss denied.

HANNAH, C.J., and DANIELSON, J., concur.

GUNTER, J., not participating.

PAUL E. DANIELSON, Justice, concurring. I concur with the result as stated by the majority, but only as to where the instant case now stands. I write only to go on record as noting that I continue to disagree that the circuit court was wholly without jurisdiction as held by the majority in *Centerpoint I* and believe this court erred by granting the writ of prohibition in that case.

From the beginning, it has been my opinion that the instant case is more than a simple rate case. In fact, the defendants had initially removed the case to federal district court, and the federal court remanded the case back to the circuit court, finding that the claims were based exclusively on Arkansas common law. The complaint asserted that Centerpoint and its affiliates were involved in a fraudulent "high-low" selling scheme for natural gas that created huge profits for the company at the expense of residential customers. *See Centerpoint Energy, Inc. v. Miller County Circuit Court*, 370 Ark 190, 258 S.W.3d 336 (2007) (*Centerpoint I*). The plaintiffs alleged that suppliers sold natural gas to the regulated utility divisions of Centerpoint for resale to residential and commercial consumers in the states of Arkansas, Texas, Oklahoma, Louisiana, and Mississippi at prices far above market prices. *See id.* The cost of

---

[7] Because we find merit in Centerpoint's venue argument, it is unnecessary for us to address their remaining argument.

the natural gas was then passed on to the customers through a purchased-gas adjustment clause. *See id.* Because of these high-priced purchases by the regulated subsidiaries, the gas suppliers were then able to sell natural gas to unregulated subsidiaries at below-market prices, and those subsidiaries, in turn, sold the natural gas to major commercial and industrial consumers. *See id.* Industrial natural gas prices are not government regulated, and the complaint alleged that because Centerpoint bought this natural gas at such low prices, it obtained a competitive advantage in the industrial natural gas market. *See id.* The complaint asserted causes of action against the defendants for fraud, unjust enrichment, and civil conspiracy and sought relief on behalf of residential and commercial customers in the form of actual money damages sustained as a result of the alleged fraud, as well as exemplary and punitive damages and reasonable and necessary attorneys' fees. *See id.*

The General Assembly has made clear that the jurisdiction of the Arkansas Public Service Commission "to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property." Ark. Code Ann. § 23-3-119(f) (Repl. 2002). The majority in *Centerpoint I* held that, "[i]n essence, the plaintiffs are complaining that they are being charged too much for natural gas, and their actual damages can only be measured by comparing the rates they have been charged and the rates they should have been charged absent the alleged fraudulent conduct." I continue to disagree with that premise.

Our original review of this case was to be confined to the pleadings. *See Erin, Inc. v. White County Circuit Court,* 369 Ark. 265, 253 S.W.3d 444 (2007). My review of the pleadings reveals that the essence of plaintiffs' complaint is unjust enrichment, and that they are most definitely seeking disgorgement of profits by the gas suppliers. For the above reasons, I continue to believe this court erred in granting the original writ of prohibition.

HANNAH, C.J., joins.